**HUSA INTERNATIONAL, INC., d/b/a Hotel Condado Beach, Plaintiff,**

v.

**TEAMSTERS UNION OF PUERTO RICO, LOCAL 901, Defendant.**

Civ. No. 86–1810 (JAF).

United States District Court, D. Puerto Rico.

July 22, 1987.

Amelia Fortuño-Ruiz, Lespier, Muñoz Noya & Ramirez, San Juan, P.R., for plaintiff.

Pedro J. Varela, San Juan, P.R., for defendant.

**OPINION AND ORDER**

FUSTE, District Judge.

This action, brought pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. sec. 185, is before us on cross-motions for summary judgment. Plaintiff, HUSA International, Inc., doing business as the Hotel Condado Beach, asks that we vacate an arbitration award. Defendant, Teamsters Union of Puerto Rico, Local 901, asks that the Condado Beach complaint be dismissed and the award be enforced.

The facts of the case are as follows: For many years, the Condado Beach and La Concha Hotels were both operated by HUSA. HUSA and the Union were parties to a collective bargaining agreement (CBA) effective February 25, 1985, covering all terms and conditions of employment in the complex consisting of both hotels. At some point that year, it was decided to separate the operation of the two hotels. On November 29, 1985, HUSA, the Union, and United Hotels of Puerto Rico, signed a stipulation which would bind the parties in the transition process. According to the stipulation, from December 1, 1985 and after, HUSA would operate the Condado Beach Hotel and United Hotels would operate La Concha. The CBA in effect would continue to operate and bind the parties at each hotel.

Under the terms of the stipulation, the personnel was given the option of exercising, in writing, by order of seniority, a first

and only preference of choice of hotel. One combined roll of seniority was created for the entire complex and the employees were placed according to their choices. It was agreed, however, that if there was a vacant position on the staff of one hotel, an employee with less seniority, for whom there was no space at the hotel of his choice, could be offered a position at the other, if he was more senior than others on the roll. Such employees also had the option of remaining in temporary suspension to await a recall at the hotel of their choice.

United Hotels clarified that the personnel working on December 1st would be guaranteed placement at one hotel or the other; that is, that no employee would be dismissed at the date of separation due to that fact.

The stipulation further states:

11. The parties state that unless otherwise specified in this stipulation or in any of the letters sent for the purposes of clarification, ... this stipulation shall not have the effect of changing the terms and conditions of the Collective Bargaining Agreement in effect.

As a matter of clarification, one of the letters considered to be part of the agreement contains the following term:

As of November 30, 1985 there will be personnel on lay off. If after December 1, 1985 there arises an opportunity for work at any of the two hotels, it shall be offered to the employee to whom it corresponds pursuant to a sole list of seniority which shall be prepared. The employee will accept or not the offering. If he/she should accept, he/she shall be considered, for all purposes, as employee of said hotel. *If he/she does not accept, he/she may only choose in the future from opportunities for work which might arise at the other hotel.* (Emphasis added)

It is against this background of facts that the events leading to the grievance were played.

Employee Carmen Lockner, a cashier at the hotel complex since 1973, had achieved a level of seniority by which she had not yet reached the point of occupying a position on a year-round basis. That is, there were times during the year that she was laid off, and called back to fill in for others on vacation, or do other relief work. As events unfolded, she was on lay-off when she was called in to fill in for a vacationing Condado Beach cashier from December 16, 1985 until January 19, 1986.[1] At the time of separation, she had not expressed a written preference as to which hotel she wanted to work at.

Around the end of December, 1985 or beginning of January 1986, the Condado Beach reopened the operation of its nightclub, Club 1919, for which there arose a cashier's regular night shift slot from approximately 6:00 P.M. to 3:00 A.M. Following the order of seniority, Lockner was offered the position. She refused the offer because she felt that she had reached an age where she was no longer able to work shifts until the early hours in the mornings. She, therefore, stayed in the relief work position until the person regularly occupying that shift returned on January 19, 1986.

The regular night-shift position was then offered to Betsy López, the cashier on lay-off with the next highest seniority. She accepted the position, but two days later, was "bumped"[2] by a Mr. Casanova, another cashier with greater seniority, who had previously worked that shift and wanted it back. López was not laid off, but came to occupy a shift consisting of two nights and three days.

After completing that particular substitution, Lockner was no longer called to do vacation/relief work at the Condado Beach. She filed the grievance when she learned that López and another employee with less seniority were being called in to work there.

It was the hotel's contention that Lockner, having rejected the night shift at the

---

1. Her seniority was such that she was not high enough to be given a regular assignment to one of two hotels at the moment of the separation.

2. Under terms of the CBA, employees with higher seniority could oust those below them in order to occupy shifts more to their liking.

Condado Beach, could thereafter only choose work opportunities which might arise at La Concha, as stated in the stipulation separating the two hotels. The arbitrator found otherwise. Under the CBA, when a position becomes available, it must first be advertised on the Union's bulletin board for three working days so that employees interested in the vacancy may request it. The arbitrator found that the hotel had failed to properly advertise the position on the bulletin board, that in the past, the hotel had allowed employees to refuse a shift and remain on lay-off until another shift arose, without it being considered a waiver of seniority, and that the hotel at no time explained to Lockner that by refusing the shift, she would not be called back to the hotel to work. Additionally, the hotel never sent her a dismissal notice.

The arbitrator concluded that the hotel did not have "clean hands" in the matter: That is, through its own actions, it impeded the grievant from understanding that by rejecting the offer she would be waiving her seniority at the Condado Beach.

The arbitrator determined that Lockner's seniority rights had been violated by the hotel. He ordered reinstatement to the cashier shift which corresponds to her pursuant to the seniority order and her bumping right, or, in the alternative, she should be called to cover, as a substitute cashier, vacations, sick leave or other absences.

The scope of judicial review of an arbitration award is extremely narrow. It must be proven that the award is unfounded in reason and fact; that it is based upon reasoning so palpably faulty that no judge or group of judges could ever have conceivably made such a ruling. *In re Hotel Da Vinci, Inc.*, 797 F.2d 33, 34 (1st Cir.1986); *Bettencourt v. Boston Edison*, 560 F.2d 1045 (1st Cir.1977).

The hotel argues that the award does not draw its essence from the CBA and the stipulation in that the arbitrator found that any employee on lay-off could continue on lay-off until a more convenient shift became available. We must agree that this conclusion cannot be reached within the confines of the CBA and the stipulation. We find, however, that the decision can be supported by a broader interpretation of the two documents. In essence, the arbitrator found that the CBA clause requiring three working days' notice of position vacancies is compatible with the stipulation clause that positions be offered to the person with highest seniority. That is, had the hotel properly announced the vacancy, Casanova would have come forward to claim it and that shift, therefore, would not have fallen to Lockner. Therefore, it can be said the hotel breached the CBA by failing to follow the proper procedure and did indeed come to this arbitration with "unclean hands."

We are well aware that if we look only at the stipulation, the hotel's position is the obvious one. But the arbitrator has interpreted the CBA notice clause as being compatible with the stipulation and a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

The hotel's contention that the award is vague and ambiguous is frivolous. Obviously, the award reinstates Lockner to her level of seniority. The arbitrator would have no way of knowing where, at that moment, she should be placed—a regular shift or relief work, so he, therefore, phrased the award to cover whichever was appropriate. That Lockner is entitled to back pay for relief shifts which were worked by persons with less seniority, which she would have been available to cover, is equally clear.

The complaint is hereby DISMISSED and the award shall be enforced.

IT IS SO ORDERED.