**MICHIGAN DEPARTMENT OF STATE, Plaintiff,**

v.

**UNITED STATES of America, Department of Health and Human Services, and Tommy G. Thompson, in his capacity as Secretary of the Department of Health and Human Services, Defendants.**

**No. 5:01–CV–01.**

United States District Court, W.D. Michigan, Southern Division.

Oct. 2, 2001.

Matthew C. Keck, Jennifer M. Granholm, Attorney General, State Affairs Division, Lansing, MI, for Michigan Department of State, named as "State of Michigan, Department of State" on complaint, plaintiff.

Ronald M. Stella, Charles R. Gross, U.S. Attorney's Office, Western District of Michigan, Grand Rapids, MI, Kent, for USA, defendant.

## *OPINION*

ROBERT HOLMES BELL, Chief Judge.

Before this Court is Plaintiff Michigan Department of State's ("Michigan") claims that 42 U.S.C. § 666(a)(13) is unconstitutional and that even if the statute is constitutional, the Department of Health and Human Services' ("DHHS") decision to deny Michigan an exemption from this statute under 42 U.S.C § 666(d) violates the Administrative Procedures Act ("APA"). 5 U.S.C. §§ 701–706 (2001). Currently pending are Plaintiff's motion for summary judgment and Defendants United States of America, Department of Health and Human Services, and Tommy G. Thompson's (collectively the "United States") motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons that follow, Plaintiff's motion will be DENIED, and Defendants' motion will be GRANTED.

### I. Factual Background and Statutory History

Beginning in 1975, Congress decided that an important way to help needy families was to improve child support collection and that it would create Child Support Enforcement ("CSE") programs to achieve this goal. Pub.L. No. 93–647 § 451, 88 Stat. 2337, 2351 (1975). *See generally Hodges v. Shalala,* 121 F.Supp.2d 854, 860–61 (D.S.C.2000), *Kansas v. United States,* 24 F.Supp.2d 1192, 1193–94 (1998) (providing background information on the development of CSE programs) *aff'd Kansas v. United States,* 214 F.3d 1196 (10th Cir.2000); *Childrens and Parents Rights Ass'n of Ohio, Inc., v. Sullivan,* 787 F.Supp. 724, 726 (N.D.Ohio 1991) (describing history of Congress' CSE efforts). Most importantly, Congress intended to obtain the states' assistance in its grand participatory scheme by paying the states for engaging in CSE programs. Pub.L. No. 93–647 §§ 455, 458, 88 Stat. 2337, 2355–57 (1975).

From the very beginning, CSE programs were designed to assist with the collection of child support across state lines. Pub.L. No. 93–647 § 454(9)(B)–(C), 88 Stat. 2337, 2355 (codified as amended at 42 U.S.C. § 654(9)(B)–(C) (2001)). Specifically, states were required to have a plan satisfying "standards prescribed by the Secretary [to] cooperate with any other State ... in locating an absent parent residing in the State (whether or not permanently) against whom any action is being taken under a program established under a plan approved under this part in another State." *Id.* An important tool assisting states to work together and with

the federal government to track absent parents is the Federal Parent Locator Service ("FPLS"). Pub.L. No. 93–647 § 453, 88 Stat. 2337, 2353–54 (codified as amended at 42 U.S.C. § 653 (2001)). Initially, Congress only mandated that the FPLS contain an individual's address and place of employment. *Id.* at § 453(a).

Changes were made to CSE programs and the FPLS as a result of the "Child Support Enforcement Amendments of 1984." Pub.L. No. 98–378, 98 Stat. 1305 (codified as amended in scattered sections of 42 U.S.C .). With these amendments, Congress mandated that the FPLS include "the social security account number." Pub.L. No. 98–378 § 19(a), 98 Stat. 1305, 1322 (codified as amended at 42 U.S.C. § 653(a)(2)(A) (2001)). Congress reiterated that there were financial incentives for the states to participate in this nationwide plan. In fact, the states were offered payments "[i]n order to encourage and reward State child support enforcement programs which perform in a cost-effective and efficient manner to secure support for all children who have sought assistance in securing support, whether such children reside within the State or elsewhere." Pub.L. No. 98–378 § 5, 98 Stat. 1305, 1312.

As a part of welfare reform in 1996, Congress again reevaluated the effectiveness of CSE efforts. Despite over 20 years of federal funding for CSE programs, "[o]f the [child support] cases enforced through the public child support enforcement system, only 18 percent of the caseload has a collection." Pub.L. No. 104–193 § 101(4), 110 Stat. 2110, 2110 (1996). The House Committee on Ways and Means "received extensive information through letters and testimony that the current system of pursuing child support across State lines is far too sluggish to be effective." H.R.Rep. No. 104–651, at 1405 (1996). Determined to improve interstate collections, Congress made changes to CSE programs through the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"). Pub.L. No. 104–193, 110 Stat. 2105 (1996).

These changes required each state to implement a number of new procedures including the establishment of several major databases, Pub.L. No. 104–193 §§ 311–13, 110 Stat. 2105, 2205–09 (1996), and the ability to suspend all types of licenses including drivers' licenses of individuals owing past due child support. Pub.L. No. 104–193 § 369, 110 Stat. 2105, 2251 (1996). The states were also required to collect social security numbers ("SSNs") from applicants for different types of commercial and professional licenses. Pub.L. No. 104–193 § 317, 110 Stat 2105 (codified as amended at 42 U.S.C. § 666(a)(13) (2001)). Additionally, the FPLS was greatly expanded to include information on a parent's benefits and assets. Pub.L. No. 104–193 § 316, 110 Stat. 2105, 2215 (1996). Combining the new databases, the SSNs from license applications, and the expanded FPLS, Congress intended to create "a rapid response and automated mechanism in place to locate and withhold wages legally obligated for child support payments." H.R.Rep. No. 104–651, at 1405 (1996). Because FPLS has utilized SSNs since 1984, the logical key to relating all this data from these new databases across the country and to implementing the license suspension provisions is an individual's SSN. H.R.Rep. 104–651, at 1411 (1996).

Thus, Congress has demonstrated a strong public policy for utilizing a federal identifier, an individual's SSN, to locate absent parents and to collect child support. Technical corrections to PRWORA in 1997 furthered this public policy by applying the SSN collection requirement to all drivers' license applications. Pub.L. No. 105–33 § 5536, 111 Stat 251 (codified as amended

at 42 U.S.C. § 666(a)(13) (2001)). Under the current statute, "each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary: [p]rocedures requiring that the social security number of any applicant for a . . . driver's license . . . be recorded on the application." *Id.*

## II. Analysis

### A. Subject Matter Jurisdiction

■ The United States claims but does not argue that the Court lacks subject matter jurisdiction to hear this case. The Court disagrees because Michigan's challenge to the constitutionality of a federal statute is a federal question. 28 U.S.C. § 1331 (2001). *See also Kansas*, 24 F.Supp.2d at 1194–95 (finding that Kansas had standing to challenge the constitutionality of PRWORA's CSE provisions).

### B. Standard of Review For 12(b)(6)

In evaluating a motion to dismiss under Rule 12(b)(6) the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). Here, the Court applies this standard to Michigan's claims that the SSN collection requirement violates the Spending Clause and that DHHS's decision to deny Michigan an exemption from the requirement violated the APA.

### C. Spending Clause Analysis

■ In *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), the Supreme Court articulated four limitations on the Spending Clause. *Id.* at 207, 107 S.Ct. 2793. First, "the exercise of the spending power must be in pursuit of 'the general welfare.'" *Id.* Second, Congress

must make the State's choice clear and unambiguous. *Id.* Third, the conditions must have some relationship "to the federal interest." *Id.* Fourth, Congress may not use the spending power to avoid other constitutional restrictions. *Id.* at 208, 107 S.Ct. 2793. Although not one of the four main limitations on the Spending Clause, the Supreme Court additionally "recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Dole*, 483 U.S. at 211, 107 S.Ct. 2793 (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590, 57 S.Ct. 883, 81 L.Ed. 1279 (1937)).

■ While Michigan concedes that the statute is in pursuit of the general welfare (Pl.'s Br. Opp'n at 13), it strenuously argues that the SSN requirement violates the Spending Clause because it does not satisfy the remaining parts of the *Dole* test or the coercion prong. Under the second part of the *Dole* test, the Supreme Court treats a spending provision as a contract between the federal government and the states. *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Consequently, "[t]he legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Id.* For the states to have a meaningful choice, Congress must express the terms of the contract unambiguously. *Id.* See also *Horner v. Ky. High Sch. Athletic Ass'n*, 206 F.3d 685, 692 (6th Cir.2000) (citing *Pennhurst*, 451 U.S. at 17, 101 S.Ct. 1531).

■ To determine the meaning of a statute, the Court reviews "'the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Walker v. Bain*, 257 F.3d 660,

666–67 (6th Cir.2001) (quoting *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). While the literal language of the statute is important, it may not "lead to absurd results or an interpretation which is inconsistent with the intent of Congress." *Walker,* 257 F.3d at 667. In this case, Michigan claims that the statutory language is ambiguous.

■■■■ Applying these rules of statutory interpretation, the Court finds the statute is unambiguous. Consistent with the history of Congress' efforts to fund and to develop CSE programs, the statute specifically requires Michigan to collect SSNs on drivers' license applications. 42 U.S.C. § 653(a)(13). Moreover, as it has in the past, Congress has told the states that failure to comply with these requirements will result in a loss of funding. 42 U.S.C. § 655 (2001). Michigan's argument that the state does not know whether to grant a drivers' license to individuals who either do not have SSNs or refuse to give them to the state is without merit. When enacting a program under the Spending Clause, Congress is not required to provide for every detail of the program. *Ky. Dept. of Human Res. v. Donovan,* 704 F.2d 288, 299 n. 17 (6th Cir.1983).

■■■ The third requirement of the *Dole* test states that "conditions on federal grants might be illegitimate if they are unrelated 'to the federal interest in particular national projects or programs.'" *Dole,* 483 U.S. at 207, 107 S.Ct. 2793 (quoting *Massachusetts v. United States,* 435 U.S. 444, 461, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978)). Based on language in Justice O'Connor's majority opinion in *New York v. United States,* 505 U.S. 144, 167, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), the state argues that Congress specifically had to connect CSE and drivers' license applications. (Pl.'s Br. Reply at 5). The language in Justice O'Connor's opinion, how-

ever, is a very general repetition of the *Dole* test, and although Justice O'Connor argued for a tighter relationship between the program and the federal interest, her standard was not adopted by the majority in *Dole. Compare Dole,* 483 U.S. at 207, 107 S.Ct. 2793, *with id.* at 213–18, 107 S.Ct. 2793 (O'Connor, J., dissenting). As the Tenth Circuit has recently noted, the majority's test was "much less demanding." *Kansas v. United States,* 214 F.3d 1196, 1200 (10th Cir.2000).

Applying either test to these facts, the Court finds a federal interest in collecting SSNs on drivers' license applications. For over twenty years, Congress has paid the states to help collect child support nationwide and has provided key tools like the FPLS to assist the states in this effort. More recently, Congress found that a combination of databases from all the states merged through use of SSNs, the single unique federal identifier, is the most effective way to achieve improvements in CSE programs. Because drivers' license applications represent one of the largest databases of residents within a state and are updated frequently, attaching SSNs to these applications provides an important set of data.

**D. Independent Bar to Spending Clause—The Right to Privacy**

Under the fourth part of the *Dole* test, "other constitutional provisions may provide an independent bar to the conditional grant of federal funds." *Dole,* 483 U.S. at 208, 107 S.Ct. 2793. Michigan's argument is that Congress is using Michigan to invade Michigan's citizens' right to privacy when Congress could not take this action on its own.

**1. Standing**

■■■ The United States contends that Michigan does not have standing to

raise its citizens' right to privacy claims. Although a state may not sue the federal government on behalf of its own citizens, *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,* 458 U.S. 592, 610 n. 16, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) (*citing Massachusetts v. Mellon,* 262 U.S. 447, 485–486, 43 S.Ct. 597, 67 L.Ed. 1078 (1923)), Michigan is litigating here on its own behalf. Specifically, Michigan does have standing to raise the constitutionality of Congress' exercise of its power under the Spending Clause, when as here, an unconstitutional exercise of that power would injure the state. Determining the constitutionality of a decision pursuant to the Spending Clause requires inquiry as to whether there are any other possible constitutional bars. *Dole,* 483 U.S. at 208, 107 S.Ct. 2793. The Supreme Court's examples of engaging in invidious discrimination or inflicting cruel and unusual punishment suggest at least two independent constitutional bars. *Id.* at 210, 107 S.Ct. 2793. In these examples, a state would traditionally not have standing to raise these independent constitutional bars, but because of the Spending Clause challenge, the Supreme Court indicated that state would have standing to raise these claims. Thus, because Michigan has standing to raise the constitutionality of the statute under the Spending Clause, it may argue that the statute violates its citizens' right to privacy.

## 2. The Right to Privacy

 The right to privacy "protects an individual's right to control the nature and extent of information released about that individual." *Bloch v. Ribar,* 156 F.3d 673, 683 (6th Cir.1998). To demonstrate a violation of the right to privacy, a party must show that "the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty" and that the individual's interest "keeping the information private" outweighs "the government's interest in disseminating the information." *Id.* at 684.

Michigan has not shown that the collection of SSNs on drivers' license applications "implicate[s] either a fundamental right or one implicit in the concept of ordered liberty." *Id.* at 684. On the contrary, the state is seeking to keep private a piece of information, a SSN, that citizens regularly provide to governmental entities. For instance, Michigan uses SSNs to identify individual taxpayers. MICHIGAN DEPARTMENT OF TREASURY, 2000 MICHIGAN 1040: INDIVIDUAL INCOME TAX, at 12, 20 (2000) ("[Y]ou must enter your name(s) and Social Security number(s)."); MICHIGAN DEPARTMENT OF TREASURY, 1999 MICHIGAN INCOME TAX RETURNS AND HOMESTEAD PROPERTY TAX CREDIT CLAIM, at 12, 20 (1999) (same). Although it is not necessary to reach the balancing part of this test, the government's interest here arguably outweighs the individual's interest. The government is seeking collection of SSNs for its own use, and nothing indicates that SSNs collected through this program will be publicly disseminated. In this regard, this case differs from *Greidinger v. Davis,* 988 F.2d 1344 (4th Cir. 1993), where the Fourth Circuit invalidated a Virginia statute permitting public dissemination of voters' registration including SSN. *Id.* at 1355. Contrary to the facts in *Greidinger,* federal law requires that other states' agencies have safeguards in place to protect SSNs. 42 U.S.C. § 654(26) (2001). Moreover, the government's purpose is to improve the effectiveness of interstate CSE programs. On the other hand, the individual's interest is minimal in this case. While the individual legitimately wants to protect herself from problems of identity theft, there is nothing to suggest that federal agencies or other states' CSE agencies perpetrate or facilitate identity theft.

### E. Coercion Theory

■ Although not part of the main Spending Clause test, the Supreme Court in *Dole* also "recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Dole,* 483 U.S. at 211, 107 S.Ct. 2793 (quoting *Steward Mach. Co. v. Davis,* 301 U.S. 548, 590, 57 S.Ct. 883, 81 L.Ed. 1279 (1937)). Despite Michigan's vigorous claim that the SSN requirement is coercive, the state fails to cite any case invalidating Congressional action under the Spending Clause based on coercion. Moreover, the Tenth Circuit in *Kansas* found "the coercion theory is unclear, suspect, and has little precedent to support its application." *Kansas,* 214 F.3d at 1202. This Court similarly finds the coercion theory without merit in light of the clear choice presented to Michigan by Congress. Michigan has a free choice whether to comply with the requirement that it collect SSNs on drivers' license applications and receive federal funds or not. Congress and not the state makes the rules, and compliance with the SSN collection requirement is a clear condition precedent to receiving federal funds.

### F. Review of DHHS Decision Denying Exemption

In 1984, Congress provided a mechanism for the states to obtain exemptions from CSE program requirements. Specifically,

> If a State demonstrates to the satisfaction of the Secretary, through the presentation to the Secretary of such data pertaining to caseloads, processing times, administrative costs, and average support collections, and such other data or estimates as the Secretary may specify, that the enactment of any law or the use of any procedure or procedures required by or pursuant to this section will not increase the effectiveness and efficiency of the State child support enforcement program, the Secretary may exempt the State, subject to the Secretary's continuing review and to termination of the exemption should circumstances change, from the requirement to enact the law or use the procedure or procedures involved.

42 U.S.C. § 666(d) (2001). Michigan argues that the Court should review DHHS's decision to deny the state an exemption and that the Court should grant Michigan an exemption.

#### 1. Not Subject to Review

■ The United States argues that under the APA, this Court does not have the authority to review DHHS's decision to deny Michigan an exemption. "This chapter [of the APA] applies, according to the provisions thereof, except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a) (2001). Under the second exception of this provision, the Sixth Circuit has said that

> "the question is whether the Secretary ... enjoys absolute discretion—whether such a decision is totally committed to the judgment of the agency because of the practical requirements of the task to be performed, absence of available standards against which to measure the administrative action, or even the fact that no useful purpose could be served by judicial review."

*Joelson v. United States,* 86 F.3d 1413, 1418 (6th Cir.1996) (citing *Cappadora v. Celebrezze,* 356 F.2d 1, 5–6 (2d Cir.1966)). The actual language of the statute is key to making this determination. *Id.*

Based on a reading of the exemption provision, 42 U.S.C. § 666(d), the Court finds that 5 U.S.C. § 701(a)(2) applies and that DHHS's decision to deny Michigan an exemption is not reviewable. Section

666(d) includes four indications that granting an exemption is within DHHS's discretion. First, the state must "demonstrate[ ] to the satisfaction of the Secretary." Second, DHHS may specify the data and other materials necessary to evaluate an exemption request. Third, the statute specifically says that DHHS "*may* exempt the State" "Finally, exemptions are subject to the Secretary's continuing review and to termination." This language indicates that Congress was placing the exemption decision solely within DHHS's discretion. Consequently, the Court is not authorized to review DHHS's decision.

2. Review of DHHS's Decision to Deny an Exemption

██ Even if the Court found that it had the authority to review DHHS's decision, the decision is appropriate applying either *de novo* review or deferential review. Reading the exemption provision very literally, Michigan argues that DHHS may only consider the effect and efficiency of the SSN collection requirement on CSE within Michigan. This reading is contrary to the history, purpose, and intent of Congress' funding of CSE programs. In the words of the Sixth Circuit, the Court "may not, however, rely on the literal language of the statute where such reliance would lead to absurd results or an interpretation which is inconsistent with the intent of Congress." *Walker v. Bain*, 257 F.3d 660, 667 (6th Cir.2001) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290, (1989)). Consequently, the Court finds that the exemption statute permits, even requires, DHHS to consider the effect of an exemption on interstate cases and that therefore, DHHS's decision in this case to deny an exemption because no information was provided concerning interstate cases was proper.

III. Conclusion

For the foregoing reasons, Plaintiff Michigan's motion for summary judgment is DENIED, and Defendant United States motion to dismiss is GRANTED. An order and judgment consistent with this opinion will be entered.

### *ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Docket # 10) is *GRANTED*.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket # 16) is **DENIED**.

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of Defendants and Plaintiff's complaint is **DISMISSED** in its entirety.