IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 261
_____

ST. JAMES COMMUNITY HOSPITAL, INC.,    )
                                       )
        Petitioner,                    )
                                       )
    vs.                                )        No. 03-291
                                       )
DISTRICT COURT OF THE EIGHTH           )
JUDICIAL DISTRICT, IN AND FOR THE      )
COUNTY OF CASCADE, HONORABLE           )
THOMAS M. McKITTRICK, District Judge,  )
                                       )
        Respondent.                    )
_____  )
                                       )
BENEFIS HEALTH CARE, and/or BENEFIS HEALTH  )
CARE FOUNDATION, d/b/a and BENEFIS HEALTH  )
CARE EAST CAMPUS and HEALTH CARE WEST  )
CAMPUS,                                )
                                       )
        Petitioner,                    )
                                       )
    vs.                                )        No. 03-315
                                       )
DISTRICT COURT OF THE EIGHTH           )
JUDICIAL DISTRICT, IN AND FOR THE      )
COUNTY OF CASCADE, HONORABLE           )
THOMAS M. McKITTRICK, District Judge,  )
                                       )
        Respondent.                    )
                            _____

                            O R D E R
                               AND
                            O P I N I O N
                            _____

¶1    Benefis Health Care, St. James Community Hospital, Inc., St. Patrick Hospital

Corporation, and Med-Cor Health Information Solutions, Inc. (health care providers), have

1

filed an application for writ of supervisory control and stay of district court proceedings. Joan Peterson, Patrick Wallace, and Stanley Schlemmer (plaintiffs), representing themselves and others similarly situated, have filed a response opposing the application. For the reasons set forth below, we grant the writ of supervisory control.

¶2 This class action was originally filed in the Eighth Judicial District Court, Cascade County. Plaintiffs' complaint seeks an award of monetary damages predicated upon excessive fees allegedly charged for copies of patients' medical records from 1993 to 1999. The plaintiff class was certified, and the class was notified in May 2000. The class members were notified by opt-out notification, which required potential class members to opt-out of the litigation or automatically be included in the plaintiff class. Thereafter, plaintiffs served discovery requests on the health care providers seeking information regarding the names of patients and requestors and the number of requests for copies, number of copies, the charge for the copies and the dates of the requests. The health care providers objected to the discovery requests on the grounds that the requested information was confidential health care information that could not be divulged without patient authorization. The District Court, on March 21, 2003, entered an order granting the motion to compel and directing the providers to provide certain information.

¶3 In their application, the health care providers ask that we order the District Court to rescind its March 21, 2003, discovery order compelling disclosure of the following:

> [I]dentities of individuals who have requested from the defendant health care providers copies of their health care records between 1993 and 1999. The information to be provided . . . shall also include the names of requestors, the

2

patient's name, the number of pages provided per each request, the amount charged, and the date of the request. All of this information shall be provided and produced, without exception, to Plaintiffs' counsel at the burden and expense of the defendant health care providers.

¶4 It is the health care providers' contention that the above order requires them to violate the Uniform Health Care Information Act, § 50-16-501, et seq., MCA, as well as the constitutionally-protected privacy rights of the patients whose records will be disclosed without their consent, resulting in irreparable harm which cannot be remedied upon appeal. The Uniform Health Care Information Act only allows discovery of health care information upon a showing of a compelling state interest that outweighs the patients' privacy interests. Section 50-16-535(1)(i), MCA. The health care providers point out that the plaintiffs have not even attempted to make a showing of a compelling state interest nor was there a finding by the District Court of such a compelling state interest. Finally, the health care providers contend that the requirement that they absorb the cost of identifying the plaintiff class is contrary to established precedent, *Oppenheimer Fund, Inc. v. Sanders* (1978), 437 U.S. 340, 356, 98 S.Ct. 2380, 2392, 57 L.Ed.2d 253, 268 (ordinarily, a party must bear the burden of financing his own suit), and will impose a substantial burden on the providers.

¶5 The District Court agreed with plaintiffs' contention that the information sought is not of a confidential, private nature. Further, the District Court noted that the health care providers' concern for patients' privacy rights seemed to smack of convenience given that the providers had allowed access to patient records by a third party (Med-Cor Health Information Solutions, Inc.) without any authorization by the patients.

3

¶6 This application presents a conundrum. Plaintiffs' counsel have published a class action "opt-out" notification to all potential class members. Thus, in theory, but for those who may have "opted-out," the requestors and patients are the clients of the plaintiffs' counsel. In essence, plaintiffs' counsel are seeking to identify their own clients in a class action suit in which the District Court has already found the providers liable for violating the Health Care Information Act. Plaintiffs' counsel need the requested information in order to compute damages and notify the class members.

¶7 Theory aside, the patients and requestors have not given any consent to having their names or records released to anyone. The providers, who have the names and information, are correct in saying that the relevant portions of the Uniform Health Care Information Act do not allow them to produce the health care information absent a showing of a compelling state interest. There has been no such showing in this case.

¶8 Despite the internal inconsistencies in the providers' claims of privacy, we are concerned with the prospect of having patient names released without the patients' consent. As mentioned above, the Health Care Information Act requires a showing of a compelling state interest before a Court can require production of health care information pursuant to a discovery request. More importantly, Article II, Section 10, Montana Constitution's guarantee of privacy encompasses confidential "informational privacy." *State v. Nelson* (1997), 283 Mont. 231, 242, 941 P.2d 441, 448. The names of patients of the health care providers fall within the Act's definition of "health care information." Section 50-16-504(6), MCA ("any information, whether oral or recorded in any form or medium, that identifies or

4

can readily be associated with the identity of a patient and relates to the patient's health care"). The District Court erred in concluding that patient names are not of a private confidential nature. We conclude that the patient names are both constitutionally and statutorily protected. At the same time, as the District Court aptly noted, it would be entirely inappropriate to allow the privacy provisions of the Act to be used as a tool to thwart the reasonable discovery efforts of those whom the Act is designed to protect.

¶9    In order to ascertain the amount of damages, plaintiffs' counsel need to know the number of copies requested, the amounts charged per copy and the dates of the requests. Names of patients or requestors are not, however, necessary for purposes of damage calculation.  The District Court's order of March 21, 2003, to the extent it requires production of patient names, infringes on the patients' right of informational privacy.

¶10    The District Court, in requiring the production of names of patients and requestors, was concerned with facilitating subsequent notices that may be given by plaintiffs' counsel. To the extent that the order requires the production of the names of non-patient requestors (e.g. attorneys, insurance companies) whose privacy is not at issue, the order is affirmed. As stated above, to the extent the order requires the production of names of patients, it must be vacated. Notification of patients will have to be accomplished through other means such as an "opt-in" notification.

¶11    Finally, the health care providers contend that the District Court erred in ordering that they shoulder the cost of securing the requested information. They cite the United States Supreme Court's decision in *Oppenheimer* for the proposition:

5

The general rule must be that the representative plaintiff should perform the tasks [necessary to notify the class], for it is he who seeks to maintain the suit as a class action and to represent other members of his class. In *Eisen IV* we noted the general principle that a party must bear "the burden of financing his own suit," . . . . Thus ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant.

*Oppenheimer Fund*, 437 U.S. at 356, 98 S.Ct. at 2392, 57 L.Ed.2d at 268 (citation omitted).

¶12     While recognizing the principle that the expense of class notice must usually be borne by the plaintiffs, the plaintiffs here argue that the rationale for that general rule is based on the assumption that class notification normally happens early in the court proceedings where there is strong doubt that the plaintiff will prevail. *Meadows v. Ford Motor Company* (W.D. Ky. 1973) 62 F.R.D. 98. In *Meadows*, the court noted that there was no longer any doubt as to the outcome of the suit since liability had been determined. "Only details as to the method of perfecting the remedies available to the plaintiff, insofar as hiring goes, remain to be accomplished by the Court." A number of other courts have determined that allocating costs of notification to defendants is proper once the liability of the defendant has been established. *Catlett v. Missouri Highway & Transp. Com.* (W.D. Mo. 1984), 589 F.Supp. 949; *Allen v. Leis* (S.D. Ohio), 2002 WL 1752279, 2002 U.S. Dist. LEXIS 14764; *Kyriazi v. Western Electric Co.* (D. N.J. 1979), 465 F.Supp. 1141; *Macarz v. Transworld Sys.* (D. Conn. 2001), 201 F.R.D. 54.

¶13     In the present case, since liability has been determined and Montana law, § 50-16-525, MCA, imposes a duty upon health care providers to maintain records of each person who has received health care information from a patient's file during the preceding three

6

years, we determine that the District Court was acting within its discretion when it ordered that the health care providers bear the cost for producing the information as to requests for copies.

¶14    This matter is remanded to the District Court with instructions to enter an order consistent herewith.

DATED this 25th day of September, 2003.

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER