REQUESTED BY: Ted Stutheit, Executive Director State Electrical Division
You have asked whether the State Electrical Board should require Social Security Account Numbers (SSANs) on applications for licenses issued by the Board. You recognize that Neb. Rev. Stat. § 81-2118 (Supp. 2003)[1], requires all license applications to include the applicant's social security number, but are concerned that federal law may prohibit the practice.
[1] 2004 Neb. Laws LB 914 amended this section, but the SSAN requirement was not changed.
We have concluded that federal law does not preclude the Board from complying with the SSAN disclosure requirement of state law. However, federal law requires that the person being asked to provide his SSAN be informed of the statutory authority for the request or demand, whether the furnishing of his SSAN is mandatory or voluntary, and how the information is to be used. More detail regarding the recommended content of this disclosure may be found at the end of this opinion.
 DISCUSSION
We have considered the same issues previously, but in other contexts. Op. Att'y Gen. No. 94031 (April 25, 1994) dealt with handgun certification. The author of the opinion pointed to Section 7 of the Privacy Act of 1974, 5 U.S.C. § 552a Note, observing that it prohibited any federal, state, or local government from denying any right, benefit, or privilege afforded by law because of a person's refusal to disclose his SSAN. Some exceptions were noted, such as where federal law required disclosure or where a statute or regulation adopted prior to January 1, 1975, mandated the disclosure and the agency had a system of records in place, but handgun certification fit none of the exceptions. Nor was handgun certification covered by 42 U.S.C. § 405(c)(2)(C), which permits a state or political subdivision to require SSANs in the administration of tax laws, and laws pertaining to general public assistance, driver's licenses, or motor vehicle registration. Consequently, the Attorney General decided that an individual could not be required to provide his SSAN for purposes of handgun certification even though state law required the applicant to provide that information. The Privacy Act provision permitted SSANs to be requested, the Opinion concluded, but if requested then the applicant needed to be told whether disclosure was voluntary or mandatory, under what authority the number was requested, and the uses to which the information would be put. Your sense of what federal law disallows may date back to this time period.
The topic was revisited some years later in Op. Att'y Gen. No. 01025 (June 19, 2001), this time involving applications for licenses and permits from the Nebraska Game and Parks Commission. The opinion noted that in 1997, in response to a federal statute enacted with the goal of improving child support enforcement in the states (42 U.S.C. § 666), the Nebraska Legislature enacted the License Suspension Act, Neb. Rev. Stat. §§ 43-3301 through 43-3326, and also amended numerous licensing statutes accordingly. The License Suspension Act was intended to encourage the payment of familial support by sanctioning nonpayment by suspension of various types of licenses. Among other things, the Act required licensing authorities to provide the applicant's SSAN to the Department of Health and Human Services if the number was available and such disclosure was permissible under law. Neb. Rev. Stat. § 43-3324(3) (1998). This led the opinion's author to discuss federal law on the subject. The author noted that Section 7 of the Privacy Act, summarized above, included an exemption for "any disclosure which is required by federal statute,"5 U.S.C. § 552a Note (Pub.L. No. 93-579, § 7(a)(2)(A)). Such disclosure requirement was found in 42 U.S.C. § 666. The author understood this law to be a federal mandate that states have procedures which require the social security number of the applicant to appear on applications for various types of licenses, including recreational and occupational licenses. Although the analysis involved there was more complex than it is here, in part because the variety of licenses issued by the Game and Parks Commission, for our purposes it is sufficient to note that42 U.S.C. § 666 was perceived as a federal SSAN disclosure requirement which qualified as an exception to the Privacy Act's general prohibition against requiring disclosure of that number as a condition of receiving government benefits. Thus, because of this change in the federal law, it appears the situation shifted from one where most licensing agencies could not require SSANs to one where most, if not all, licensing agencies could do so.
We would add that the answer would have been more clear had it involved occupational, instead of recreational licenses, since Neb. Rev. Stat. § 43-3340 (1998) specifically requires social security numbers to be recorded on applications for occupational licenses. Therefore, unless there is reason to see things differently than we did in 2001, or unless there has been another change in the federal law on the subject, we believe the State Electrical Board is required to abide by Neb. Rev. Stat. §§ 81-2118 and 43-3340 as written, and require each application to include the applicant's SSAN.
One recent case of interest is Schwier v. Cox, 340 F.3d 1284 (11th Cir. 2003). This was an appeal from a U.S. District Court's dismissal of a civil rights action. The action had been filed by disgruntled would-be voters after Georgia voter registration officials rejected their applications because they failed to include their social security numbers on the application forms. The District Court had concluded that Section 7 of the Privacy Act of 1974 was a dead letter, relying in part on the fact that it was never codified in the United States Code. Reinstating the lawsuit, the Circuit Court of Appeals instructed that the Code cannot prevail over the Statutes at Large.[2] So even though the prohibition in question is hard to find and its viability has been questioned by at least one federal judge, the prohibition appears to be very much alive.
The fact that the SSAN disclosure provision of 42 U.S.C. § 666 is actually one of a number of conditions a state must meet if it wants to qualify for certain federal funding rather than a direct command that all states must obey could cause one to question whether it fits within the Privacy Act's exception for disclosures "required by federal statute." In addition, the notion of it being a "requirement" is arguably further weakened by the fact that compliance may be waived by the federal official in charge if the state makes an adequate showing.42 U.S.C. § 666(d) (Supp. 2004).
That states do not necessarily have to comply with 42 U.S.C. § 666
was explained in Michigan Department of State v. United States,166 F. Supp. 2d 1228 (W.D.Mich. 2001), where the court rejected Michigan's challenge to being forced to collect social security numbers of drivers' license applicants:
 Beginning in 1975, Congress decided that an important way to help needy families was to improve child support collection and that it would create Child Support Enforcement ("CSE") programs to achieve this goal. . . . Most important, Congress intended to obtain the states' assistance in its grand participatory scheme by paying the states for engaging in CSE programs.
* * *
 Michigan has a free choice whether to comply with the requirement that it collect SSNs on drivers' license applications and receive federal funds or not. Congress and not the state makes the rules, and compliance with the SSN collection requirement is a clear condition to receiving federal funds.
Id. at 1231, 1236 (citations omitted).
So, one is faced with an apparent conflict between a clear and direct, albeit somewhat hidden, prohibition and a provision which probably (but not necessarily) must be included by a state in its CSE plan if the state wants to receive federal funding for certain welfare programs. A hypothetical state which has not chosen to participate in the federal program may still be barred by Section 7 of the Privacy Act from conditioning the grant of a license upon the applicant's disclosure of his SSAN, even if that state's law requires social security numbers to be obtained for purposes of aiding child support enforcement.
Despite the uncertainty arising from the fact that 42 U.S.C. § 666's SSAN disclosure provision is a condition for funding rather than a direct federal mandate, we know of no proposition of law which would subordinate the more recent, but less direct and less forceful, requirement of42 U.S.C. § 666 to the express prohibition found in Section 7 of the Privacy Act. On the contrary, it has been said that "a hierarchy of statutory dignities is foreign to our government's scheme." Cooper v. General Dynamics Convair Aerospace Div., 533 F.2d 163, 169 (5th Cir. 1976), cert. denied sub nom. International Association of Machinists and Aerospace Workers v. Hopkins, 433 U.S. 908, 97 S.Ct. 2972,53 L. Ed. 2d 1091 (1977). Because Nebraska has chosen to participate in the federal program, the SSAN disclosure requirement of 42 U.S.C. § 666
is a federal requirement, thus qualifying as an exception to the Privacy Act's prohibition.
 CONCLUSION
We have found no reason to alter our opinion that a licensing agency's demand for an applicant's SSAN pursuant to 42 U.S.C. § 666 and related state law requirements is an exception to the Privacy Act prohibition against conditioning any right, benefit, or privilege on the individual's disclosure of his SSAN. The applicant's SSAN is required on the application.
If you have not already done so, it is suggested that you include on the application form a statement informing the applicant that inclusion of his social security number is mandatory, that it is required by42 U.S.C. § 666 and Neb. Rev. Stat. §§ 43-3340 and 81-2118, and that it is being requested so that it may be used in administering Title IV-D of the Social Security Act (Familial Support Enforcement) and related provisions of state law. This is to comply with the notification guidelines of the Privacy Act. See Pub.L. No. 93-579 Section 7(b) [5 U.S.C. § 552a Note].
Sincerely,
 JON BRUNING Attorney General
 Mark D. Starr Assistant Attorney General
Approved:
_____________________________ Attorney General
[2] One presumes that the appellate court would be equally unpersuaded by the fact that the annotated version of the U.S. Code (U.S.C.A.) refers to Section 7 in the past tense and includes a bracketed reference to a 1988 amendment which repealed provisions "set out as a note under this section," a reference which could suggest Section 7 was among the provisions repealed.