DA 09-0101

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 8

MONTANA SHOOTING SPORTS ASSOCIATION, INC.,
GARY S. MARBUT, ROBERT C. CLARK, CAROL LATTA,

      Plaintiffs and Appellants,

    v.

STATE OF MONTANA, STEVE BULLOCK, Attorney
General of the State of Montana, MONTANA
DEPARTMENT OF FISH, WILDLIFE and PARKS,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV 06-94
                Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Quentin M. Rhoades; Sullivan, Tabaracci & Rhoades; Missoula, Montana
            Thomas Lee Bruner; Poore, Roth & Robinson; Butte, Montana

      For Appellees:

            Hon. Steve Bullock, Montana Attorney General; Robert N. Lane,
            John F. Lynch; Special Assistant Attorneys General;
            Montana Department of Fish, Wildlife and Parks; Helena, Montana

            K. Amy Pfeifer; Special Assistant Attorney General; Montana Department
            of Health and Human Services; Helena, Montana

                          Submitted on Briefs:  November 18, 2009

                                  Decided:  January 19, 2010

Filed:

                _____
                          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Montana Shooting Sports Association Inc. (MSSA), Gary S. Marbut (Marbut), Robert C. Clark (Clark), and Carol Latta (Latta) (plaintiffs referred to collectively as, "MSSA plaintiffs") appeal the order of the District Court for the Fourth Judicial District, Missoula County, denying their request for a declaration that § 87-2-202(1), MCA, unconstitutionally infringes on the fundamental right of privacy of applicants for wildlife conservation licenses by requiring them to include the last four digits of their social security numbers (SSNs) in license applications to the Montana Department of Fish, Wildlife and Parks (FWP).  We affirm.

¶2     The sole issue on appeal is whether § 87-2-202(1), MCA, unconstitutionally infringes upon the fundamental right of privacy of applicants for wildlife conservation licenses by requiring them to include the last four digits of their SSNs in their license applications to FWP.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Section 87-2-201, MCA, requires a person seeking to purchase a hunting, fishing, or trapping license to first obtain a wildlife conservation license.  Section 87-2-202(1), MCA, then requires an applicant for a wildlife conservation license to submit an application to FWP containing the last four digits of the applicant's SSN, in addition to other personal information.  The MSSA plaintiffs contend that this requirement of § 87-2-202(1), MCA, violates their constitutional right of privacy.  Because the Montana legislature enacted the challenged provision of § 87-2-202(1), MCA, in response to

2

developments in federal welfare legislation, we review briefly the relevant federal statutory background.

¶4    In 1975 Congress, concerned with the harsh effect of the nonpayment of child support on poor families, passed the Social Services Amendments of 1974, which created Title IV, Part D (Title IV-D), of the of the Social Security Act.  Pub. L. No. 93-647, Sec. 101(a), §§ 451-460, 88 Stat. 2337, 2351-61 (1975) (codified as amended at 42 U.S.C. §§ 651-669 (2006)); *Hodges v. Shalala*, 121 F. Supp. 2d 854, 860 (D.S.C. 2000). This created a participatory child support enforcement program (Title IV-D) which the states operated, but which the federal government prescribed and administered as a prerequisite to the states' receipt of federal funding.  Sec. 101(a), §§ 451-460, 88 Stat. at 2351-61; *Hodges*, 121 F. Supp. 2d at 860.  An important element of this program was the Federal Parent Locator Service (FPLS), which was intended to help the states and the federal government work together to track absent parents.  Sec. 101, § 453, 88 Stat. at 2353; *Mich. Dept. of State v. United States*, 166 F. Supp. 2d 1228, 1231-32 (W.D. Mich. 2001).  While Congress initially only required FPLS to contain parents' addresses and employers, Sec. 101(a), § 453(b), 88 Stat. at 2353, Congress subsequently required SSNs when it enacted the Child Support Enforcement Amendments of 1984.  Pub. L. No. 98-378, § 19(a), 98 Stat. 1305, 1322 (1984) (codified as amended at 42 U.S.C. § 643(a)(2)(A) (2006)); *Mich. Dept. of State*, 166 F. Supp. 2d at 1232.

¶5    By enacting the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, (PRWORA) Congress overhauled the federal welfare program and amended

Title IV-D in an attempt to remedy ineffective enforcement and collection of child support. Pub. L. No. 104-193, Sec. 1, 110 Stat. 2105 (1996); *Mich. Dept. of State*, 166 F. Supp. 2d at 1232. PRWORA created the Temporary Assistance to Needy Families (TANF) Program, which provides block grants to states to create their own public assistance programs. Secs. 101-116, 110 Stat. at 2110-85; *Hodges*, 121 F. Supp. 2d at 861. In exchange for this funding, states were required to have a child support enforcement program in compliance with Title IV-D. Sec. 103, § 402(a)(2), 110 Stat. at 2114; *Hodges*, 121 F. Supp. 2d at 861.

¶6 PRWORA amended Title IV-D by requiring states to establish new databases and procedures for suspending all types of licenses of parents owing past due child support. *Mich. Dept. of State*, 166 F. Supp. 2d at 1232. PRWORA further required states to collect SSNs of applicants for numerous types of licenses. Sec. 317, § 466(a), 110 Stat. at 2220-21; *Mich. Dept. of State*, 166 F. Supp. 2d at 1232. Additionally, PRWORA expanded FPLS to include additional information about parents' benefits and assets. Sec. 316, § 453, 110 Stat. at 2214-20; *Mich. Dept. of State*, 166 F. Supp. 2d at 1232. Congress intended these new measures to allow interested parties to rapidly locate and withhold funds from parents owing back child support. H.R. Rpt. 104-651 at 1407 (June 27, 1996); *Mich. Dept. of State*, 166 F. Supp. 2d at 1232. The key to relating this new data to parents and to enforcing license suspensions was the parents' SSNs. H.R. Rpt. 104-651 at 1413; *Mich. Dept. of State*, 166 F. Supp. 2d at 1232. In 1997, Congress passed the Balanced Budget Act of 1997, which extended the requirement of collecting SSNs to

4

"recreational licenses." Pub. L. No. 105-33, § 5536, 111 Stat. 254, 629 (1997) (codified as amended at 42 U.S.C. § 666(a)(13)). The current dispute centers on the Montana statute enacted to comply with this last requirement.

¶7    In 1999 the Montana legislature amended § 87-2-202(1), MCA, to require an applicant for a wildlife conservation license to include in the application the applicants social security number.[1]  1999 Mont. Laws ch. 29, sec. 5. The legislature also enacted measures designed to protect SSNs collected in applications for conservation licenses. Specifically, FWP must keep SSNs confidential and may only disclose them to the Department of Public Health and Human Services (DPHHS) for use in administering its Title IV-D child support enforcement program. 1999 Mont. Laws ch. 29, sec. 5 (codified at § 87-2-202(5), MCA). Further, five years after an applicant submits her most recent application for a conservation license, FWP must delete the applicant's SSN from any FWP electronic database. 1999 Mont. Laws ch. 29 sec. 5 (codified at § 87-2-202(6), MCA). Subsequently, a number of bills have been introduced, seeking, without success, to repeal the requirement that applicants include their SSNs on applications for wildlife conservation licenses. Mont. H. 305, 2005 Reg. Sess. (Jan. 14, 2005); Mont. Sen. 187, 2003 Reg. Sess. (Jan. 10, 2003); Mont. H. 282, 2001 Reg. Sess. (Jan. 12, 2001); Mont. H. 9, 2000 Spec. Sess. (May 9, 2000).

---

[1] After the Montana Child Support and Enforcement Division of the Department of Public Health and Human Services successfully petitioned for an exemption from the federal government, the legislature amended § 87-2-202(1), MCA, to require applicants to supply only the last four digits of their SSNs. 2007 Mont. Laws ch. 237, sec. 2.

¶8    In exchange for compliance with Title IV-D, Montana receives certain benefits from the federal government.  The Child Support Enforcement Division (CSED) of DPHHS receives annual federal funding of $5.6 million to support its enforcement program, which handles approximately 40,000 cases each year.  CSED's child support enforcement program collected approximately $65 million in child support obligations in 2008.  In addition to the federal monetary support, CSED also benefits from access to federal tools for locating parents who owe child support.  Equally important, Montana's TANF program annually receives approximately $38 million from the federal government, which it uses to provide services to approximately 3,000 needy families throughout the state. These programs contribute to the development and wellbeing of children in Montana.

¶9    The MSSA plaintiffs now bring their case to the Court.  MSSA, a non-profit organization representing firearm enthusiasts in Montana, presents its members' concerns about freedom, privacy, and constitutional rights.  Marbut, President of MSSA, purchases hunting and fishing licenses, but believes that the requirement that he include the last four digits of his SSN on an application violates his constitutional right of privacy.  Marbut asserts that his reluctance to provide the last four digits of his SSN is based on two unauthorized releases of his SSN by government entities.  Clark, a retired highway patrol officer who carefully guards his SSN, used to purchase hunting and fishing licenses, but refuses to do so now that the application for a wildlife conservation license requires the last four digits of his SSN.  Latta also refuses to purchase a hunting or fishing license

6

because she does not wish to disclose the last four digits of her SSN. Latta claims that a thief stole her identity when she provided her SSN to purchase a fishing license in Lewis and Clark County, Montana; however, the District Court found that the identity theft, which occurred prior to the enactment of the provision now at issue, likely resulted from the criminal use of her SSN taken from the face of her driver's license.

¶10   The MSSA plaintiffs brought a declaratory action in the Fourth Judicial District Court, Missoula County, seeking a judgment that their constitutional right of privacy, guaranteed by Article II, Section 10 of the Montana Constitution, was violated by the requirement of § 87-2-202(1), MCA, that applicants for wildlife conservation licenses include their SSNs in their applications. The State of Montana (State) defended the constitutionality of the requirement. The District Court held a two-day bench trial at which the parties presented evidence and argument. The District Court subsequently issued its Findings of Fact, Conclusions of Law and Order, in which it examined the MSSA plaintiffs' claims. The MSSA plaintiffs' expectation of privacy regarding their SSNs, the District Court reasoned, implicated their fundamental right of privacy. Accordingly, the District Court applied strict scrutiny review to § 87-2-202(1), MCA. Concluding that the requirement of § 87-2-202(1), MCA, was narrowly tailored to compelling state interests, the District Court held that the requirement that applicants for wildlife conservation licenses provide the last four digits of their SSNs was not unconstitutional. Consequently, the District Court denied the MSSA plaintiffs' request

7

for a declaratory judgment. The District Court further denied the MSSA plaintiffs' requests for injunctive relief and attorney's fees.

¶11 The MSSA plaintiffs timely appealed. On appeal the MSSA plaintiffs renew their argument that § 87-2-202(1), MCA, violates their fundamental right of privacy because the statute is not narrowly tailored to further a compelling government interest. The MSSA plaintiffs also renew their argument that the State has no interest in collecting the last four digits of applicants' SSNs because federal law, 42 U.S.C. § 666(a)(13), only requires states to collect the SSNs of applicants for "recreational" licenses, which category does not include conservation, hunting, and fishing licenses. The State again opposes the MSSA plaintiffs' arguments, maintaining that § 87-2-202(1), MCA, is narrowly tailored to advance a compelling government interest.

**STANDARD OF REVIEW**

¶12 We review a district court's conclusions of law, including constitutional determinations, de novo. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. "When resolution of an issue involves a question of constitutional law, this Court exercises plenary review of a district court's interpretation of the law." *Shammel v. Canyon Resources Corp.*, 2007 MT 206, ¶ 7, 338 Mont. 541, 167 P.3d 886. We will uphold a district court's decision that reaches the correct result, albeit for the wrong reason. *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275.

8

## DISCUSSION

¶13 *Whether § 87-2-202(1), MCA, unconstitutionally infringes upon the fundamental right of privacy of applicants for wildlife conservation licenses by requiring them to include the last four digits of their SSNs in their license applications to FWP.*

¶14 "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Mont. Const. art. II, § 10. The right of privacy, under the Montana Constitution, is a fundamental right, which includes the right to informational privacy; that is, the right of individuals to control the disclosure and circulation of personal information. *See St. James Community Hosp., Inc. v. District Court*, 2003 MT 261, ¶ 8, 317 Mont. 419, 77 P.3d 534; *Gryczan v. State*, 283 Mont. 433, 449, 942 P.2d 112, 122 (1997). The right of privacy protects information if (1) the individual has a subjective expectation of privacy regarding the information and (2) that expectation is reasonable. *State v. Burns*, 253 Mont. 37, 41, 830 P.2d 1318, 1321 (1992).

¶15 Here, there is no question that the MSSA plaintiffs have a subjective expectation of privacy with respect to the last four digits of their SSNs. The question is whether this expectation is reasonable. To address this question, we must consider the precise privacy interest that the MSSA plaintiffs claim; namely, relief from the statutory requirement that applicants include the last four digits of their SSNs on state license applications. Notably, the MSSA plaintiffs do not assert that § 87-2-202(1), MCA, mandates

9

disclosure of their SSNs to members of the public or any unauthorized parties. Indeed, such an argument would be weak given the confidentiality provisions of § 87-2-202(5) to (6), MCA. The MSSA plaintiffs do express opposition to providing the last four digits of their SSNs to clerks at private establishments that sell wildlife conservation licenses. However, § 87-2-202(1), MCA, does not require such disclosure, and applicants are free to avoid any such disclosure by applying directly to FWP for conservation licenses. Ultimately, we conclude that the MSSA plaintiffs' expectation is unreasonable.

¶16 As one federal court observed regarding a similar argument under the United States Constitution, a SSN is a piece of information "that citizens regularly provide to government entities." *Mich. Dept. of State*, 166 F. Supp. 2d at 1235. In Montana, citizens provide their SSNs to the State for voter registration, § 13-2-110(4)(b), MCA, tax purposes, § 15-1-201(1)(b), MCA, employment and retirement purposes, *e.g.* § 19-20-208(5), MCA, occupational and diver's licenses and registration, *e.g.* § 32-9-112(3)(b), MCA (applicants for mortgage broker, mortgage lender, or mortgage loan originator license must provide SSN to Montana department of justice); § 30-14-1404(1)(d)(vi)(A), MCA (license to register as telemarketer); § 39-9-201(2)(a), MCA (registration of construction contractor); § 61-5-107(2), MCA (driver's license), child support and family law purposes, *e.g.* § 40-1-107(1)(a), MCA (requiring SSNs for marriage license); § 40-5-171(1), MCA (petition to establish or modify child support); § 42-2-205(1)(a)(iii), (b)(ii), MCA (adoption), and law enforcement purposes, *e.g.* § 46-23-504(3)(b) (registration of sexual and violent offenders). The federal government requires citizens to provide their

SSNs for additional purposes, such as taxes and student loans. 26 U.S.C. § 6109(d) (providing that SSN is principal identifier for tax purposes); 20 U.S.C. § 1091(a)(4)(B) (requiring SSNs of applicants for federal student loans); *see also* Flavio L. Komuves, *We've Got Your Number: An Overview of Legislation and Decisions to Control the Use of Social Security Numbers as Personal Identifiers*, 16 John Marshall J. Computer & Info. L. 529, 540-49 (1998) (cataloguing purposes for which government entities collect SSNs).[2]

¶17    Furthermore, unlike personal financial records to which the MSSA plaintiffs analogize SSNs, SSNs originate with the government. 42 U.S.C. § 405(c)(2)(B)(i) (tasking Commissioner of Social Security with assigning SSNs). It strains logic to suppose that the State must present a narrowly tailored, compelling interest to collect a personal identification number that the federal government assigned in the first place. Other courts to address whether statutes requiring government collection of SSNs on licensing applications violate the right of privacy have dismissed such claims summarily without applying strict scrutiny. *Mich. Dept. of State*, 166 F. Supp. 2d at 1235; *Ostric v.*

---

[2] Private, commercial companies that require and obtain individuals' personal information, including SSNs, likely pose a greater challenge to individual privacy than government entities do. *See* Ben F. Overton & Katherine E. Giddings, *The Right of Privacy in Florida in the Age of Technology and the Twenty-First Century: A Need for Protection from Private and Commercial Intrusion*, 25 Fla. St. U. L. Rev. 25, 26 (1997) (averring that "intrusions" from private and commercial entities "will present the greatest privacy challenge in the coming decade and the twenty-first century"); Jonathan J. Darrow & Stephen D. Lichtenstein, *"Do You Really Need My Social Security Number?" Data Collection Practices in the Digital Age*, 10 N.C. J. L. & Tech. 1, 2 (2008) ("If you are at all an active participant in the modern economy, the list of companies that have your Social Security Number is depressingly long." (quoting Mike Krauss, *Social Security Numbers: Original Intent or Identity Theft?*, Independence Institute (Dec. 22, 2006))).

*Bd. of Appeal*, 280 N.E.2d 692, 695 (Mass. 1972). Finally, given the confidentiality provisions of § 87-2-202(5) to (6), MCA, and applicants' ability to purchase wildlife conservation licenses directly from FWP, there does not appear to be any credible threat that the SSNs will be disclosed.

¶18 The MSSA plaintiffs, in support of the reasonableness of their expectation of privacy with regard to State collection of the last four digits of their SSNs, cite a number of statutes that protect the confidentiality of SSNs. Many of these statutes, however, do not preclude government *collection* of SSNs, but rather limit *disclosure* of SSNs collected by the State to the general public and any unauthorized persons. *E.g.* § 33-19-321(1), MCA (requiring notice to people whose personal information, including SSNs, may have been acquired by an unauthorized party due to security breach); § 40-5-206(4) to (5), MCA (requiring personal information collected, including SSNs, to be kept confidential and limiting disclosure of information by DPHHS); § 40-5-923 (limiting disclosure by government of information, including SSNs); § 61-11-105(3), MCA (limiting disclosure by department of justice of highly restricted information, including SSNs). Indeed, a number of the statutes that the MSSA plaintiffs cite expressly contemplate government collection of SSNs. *E.g.* § 2-17-552, MCA (allowing government website operator to collect personal information, including SSNs, after taking various security measures); § 40-5-226(12)(a) (providing that DPHHS must require parties to court orders establishing paternity or child support to file personal information, including SSNs). The MSSA plaintiffs, in effect, attempt to use statutory

provisions requiring limited confidentiality of information collected by the State as a bootstrap for their claim that the collecting of the information in the first place is unconstitutional. We see no logic in this argument.

¶19 The final authority cited by the MSSA plaintiffs to support the reasonableness of their asserted privacy interest is *Jefferson County v. Montana Standard*, 2003 MT 304, ¶¶ 18-20, 318 Mont. 173, 79 P.3d 805. In *Jefferson County*, a local official was arrested for driving under the influence of alcohol, and a newspaper sought release of information from the police department concerning the arrest. *Jefferson Co.*, ¶ 1. The district court ordered the information released, but required the official's SSN to be removed from the records. *Jefferson Co.*, ¶ 8. On appeal, this Court upheld the district court's ruling, reasoning that the official "does retain a privacy interest in . . . information not relevant to her status as a public official, such as her social security number and driver's license number." *Jefferson Co.*, ¶ 20. The holding in *Jefferson County*, however, did not address whether the government could collect personal information generated by the government in the first place, but instead whether the government had to disclose such information to the press.

¶20 For the foregoing reasons we conclude that the requirement of § 87-2-202(1), MCA, does not implicate the MSSA plaintiffs' fundamental right of privacy. Accordingly, rational basis review—rather than strict scrutiny—applies. *Wiser v. State*, 2006 MT 20, ¶ 19, 331 Mont. 28, 129 P.3d 133. A statute will survive rational basis

13

review if it is rationally related to a legitimate government interest. *Snetsinger v. Mont. U. Sys.*, 2004 MT 390, ¶ 19, 325 Mont. 148, 104 P.3d 445.

¶21 Here, the District Court found that the State's interests in collecting the last four digits of SSNs from applicants for conservation licenses included continued receipt of federal funding for child support enforcement programs and funding for the State's TANF program, access to federal tools for locating parents to establish paternity and enforce child support obligations, and support for the welfare of children in Montana. We conclude that these are legitimate state interests. The challenged requirement of § 87-2-202(1), MCA, rationally relates to these interests because the State would lose access to federal funding and federal tools for locating parents owing child support (which in turn would be injurious to the welfare of children of Montana) if it failed to comply with, *inter alia*, the requirements of 42 U.S.C. § 666(a)(13). Thus, § 87-2-202(1), MCA, satisfies rational basis review. Accordingly, the District Court reached the correct result in denying the relief requested by the MSSA plaintiffs.

¶22 The MSSA plaintiffs, raising an argument that applies to the rational basis test, advance that the State has no interest in collecting the last four digits of the SSNs of applicants for wildlife conservation licenses because 42 U.S.C. § 666(a)(13) only mandates collection of SSNs from applicants for "recreational" licenses. The MSSA plaintiffs contend that because a "conservation" license is not a "recreational" license, the State can comply with 42 U.S.C. § 666(a)(13) (and thus assure continued federal aid) without collecting SSNs in license applications. Further, the MSSA plaintiffs insist,

14

because some hunters harvest game for meat, hunting is not recreation, but sustenance. We disagree.

¶23 A wildlife conservation license is a prerequisite to a hunting or fishing license. Section 87-2-201, MCA. As this Court and the United States Supreme Court have previously observed, hunting is recreation. *State ex rel. Visser v. State Fish & Game Commn.*, 150 Mont. 525, 531, 437 P.2d 373, 376 (1968) ("In Montana, big game hunting is a sport."); *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 297, 105 S. Ct. 1272, 1276 (1985) ("[E]lk-hunting is 'recreation' rather than a 'means of a livelihood' . . . ."). Furthermore, interpreting "recreational license" as used in 42 U.S.C. § 666(a)(13) to include wildlife conservation licenses comports best with the congressional intent behind the provision, which was to give states "the broadest possible access to information about parents who owe child support" by "placing Social Security numbers in the records of as many State licenses as possible." H.R. Rpt. 105-78 at 78 (Apr. 28, 1997). The Montana legislature apparently agreed when, in response to Congress's inclusion of "recreational" licenses in 42 U.S.C. § 666(a)(13), it amended § 87-2-202(1), MCA, to require applicants to include their SSNs on applications for wildlife conservation licenses.

¶24 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE

15