# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00005-CV

---

**Benjamin Robert Mauldin, Appellant**

**v.**

**Texas State Board of Plumbing Examiners and Robert L. Maxwell, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN000862, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

---

Benjamin Robert Mauldin appeals the district court=s denial of his request for an injunction against the Texas State Board of Plumbing Examiners and its executive director, Robert L. Maxwell (collectively, Athe Board@). Mauldin asked that the district court declare unconstitutional the Board=s requirement that he supply his social-security number to retain his plumber=s license. He requested a permanent injunction against enforcement of the requirement and requested that his social-security number be expunged from the Board=s records. He contends that the requirement violates the equal-protection clause of the Texas Constitution. We will affirm the judgment.

### BACKGROUND

Mauldin is a plumber who has been licensed by the Board since 1974. In 1996, the Board began requiring that applicants for plumbing licenses or renewals provide their social-security numbers on the application. The requirement is based on a statutory requirement that licensing boards acquire the

social-security numbers of applicants for licenses.  *See* Tex. Fam. Code Ann. ' 231.302(c)(1) (West 2002); *see also* 42 U.S.C. ' 666(a)(13) (Supp. 2002).  This requirement is designed to enable the State to enforce child-support obligations by suspending licenses.  *See* Tex. Fam. Code Ann. ' 232.003 (West 2002).  The Board is one of the listed licensing authorities.  *Id*. ' 232.002(29) (West 2002).  Mauldin supplied his social-security number when the requirement was instituted.

He reconsidered his compliance and filed this suit seeking a declaratory judgment that requiring him to provide the Board his social-security number violates the equal-protection clause of the Texas Constitution.[1]  *See* Tex. Const. art. I, ' 3.  Mauldin acknowledges the societal need for social security and a numbering system to administer the program; his mother collects social-security payments, and he uses his social-security number when filing his income-tax return.  Mauldin=s religious beliefs make him leery of the use of the number purely as an identification tool, in part because the federal statute prompting state licensing boards to collect social-security numbers is section 666 of title 42, United States Code.  This codification reinforces to him that the use of the social-security number purely as an identification tool is a precursor to the mark of the beast that will be used after the rise of the anti-Christ foretold in the Bible.[2]  Mauldin believes that this use of social-security numbers may condition people to

---

[1]  Mauldin also complained that the requirement violates the federal Privacy Act, but the district court=s judgment states that Mauldin=s attorney announced in open court that Mauldin was no longer pursuing that claim.  Mauldin does not challenge that statement in this appeal.

[2]  The relevant prophecy is that an anti-Christian beast will require everyone Ato receive a mark on his right hand or on his forehead, so that no one could buy or sell unless he had the mark, which is the name of the beast or the number of his name.  This calls for wisdom.  If anyone has insight, let him calculate the number of the beast, for it is a man=s number.  His number is 666.@ Revelation 13: 16-18.

**2**

accept the beast=s mark later.  He says that the denial of licenses to those who do not give a social-security number is like the prophesied prevention of buying and selling.

The parties filed cross motions for summary judgment.  The Board argued that section 231.302 is a valid exercise of the police and licensing power, is not overly broad or inclusive, and does not violate equal-protection guarantees.  Mauldin filed a general motion for summary judgment, supported by a brief in which he argued that there were less intrusive alternatives to requiring all applicants to disclose their social-security numbers, that the requirement unfairly does not distinguish between licensees who shirk their parental obligations and other applicants, and that the requirement violates equal protection by infringing on his rights to work, worship, and due process.

The district court granted the Board=s motion for summary judgment against all of Mauldin=s claims and denied Mauldin=s motion for summary judgment without stating a basis.

## DISCUSSION

Mauldin contends on appeal that the district court erred by granting the Board=s motion for summary judgment because the Board violated his right to equal protection under the Texas Constitution.  *See* Tex. Const. art. I, ' 3.[3]  He contends that the requirement that he provide his social-security number to retain his plumbing license violates his rights to work, to worship, to have privacy, to not speak, to defend himself and his family, and to be free from official discrimination.  He argues that the requirement that all licensees provide their social-security numbers is overly broad because only a minuscule percentage of

---

[3] AAll free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.@ Tex. Const. art. I, ' 3.

licensees will fail to pay required child support; he also argues that the requirement has not been shown to be effective, and that other information and means could more effectively accomplish the objective and burden fewer people. He seeks reversal of the summary judgment and remand of the cause.

The appellate standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff=s theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex. App.CDallas 1992, no writ).

When evaluating a claim that the State has violated the equal-protection clause of the constitution, a court=s standard of review depends on the nature of the rights affected. If the statute limits a fundamental, constitutionally secured right or implicates a suspect class, we must strictly scrutinize the governmental action. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41 (1985); *Spring Branch ISD v. Stamos*, 695 S.W.2d 556, 559 (Tex. 1985). Otherwise we look to see if a rational basis exists for the governmental action. *See Owens Corning v. Carter*, 997 S.W.2d 560, 580 (Tex. 1999).

**The strict scrutiny test does not apply**

4

Mauldin is not a member of a suspect class. Inherently suspect classes include gender, race, alienage, and national origin. *Frontiero v. Richardson*, 411 U.S. 677, 688 (1973). Persons in suspect classes must possess either an "immutable characteristic determined solely by the accident of birth," *id.* at 686, or be "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio ISD v. Rodriguez*, 411 U.S. 1, 28 (1973). We find nothing in the record indicating that Mauldin=s complaints relate to his being a member of a suspect class; the only indications are to the contrary.

We also find as a matter of law that the six rights allegedly violated either are not fundamental or have not been violated in such a way as to trigger strict scrutiny. Fundamental rights are those that arise from the express and implied protections of personal liberty recognized in the federal and state constitutions. *Richards v. League of United Latin Am. Citizens (LULAC)*, 868 S.W.2d 306, 314 (Tex. 1993) (describing as fundamental the rights to vote, travel, marry, and, sometimes, privacy). Mauldin complains of violations of his rights to work, to worship, to have privacy, to not speak, to defend himself and his family, and to be free of official discrimination.

The latter two complaints derive from statutory, not fundamental, constitutional bases. The right to be free of official discrimination is a statutory right, not a fundamental right. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 106.001 (West Supp. 2003) (barring discrimination by state officials based on race, religion, color, sex, or national origin). The statute provides a mechanism to seek redress for violations of fundamental rights, but it does not create a separate fundamental right. The right to defend oneself, others,

**5**

and property are statutory affirmative defenses to criminal prosecution, but are not enshrined as fundamental rights in the constitution. *See* Tex. Pen. Code Ann. '' 9.31-.44 (West 1994 & Supp. 2003).

Neither is the right to work in a particular profession a fundamental right. It is a protected right, but one subject to rational regulation. *State v. Project Principle, Inc.*, 724 S.W.2d 387, 391 (Tex. 1987); *see Schware v. Board of Bar Exam=rs*, 353 U.S. 232, 239 (1957); *see also Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312-13 (1976).

Although the right to worship without governmental restriction or compulsion is fundamental, the Supreme Court has refused to strictly scrutinize laws that are generally applicable and neutral toward religion yet have an incidental effect on certain religious practices. *See Employment Div., Dept. of Human Res. v. Smith*, 494 U.S. 872, 878-79 (1990).[4] The right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes). *Id*. In *Smith*, Native Americans who used peyote in their religious rituals challenged an Oregon law criminalizing the possession of peyote. *Id.* at 874-75. The men sought relief from the law when they were denied unemployment benefits after they were fired for using peyote sacramentally. *Id*. The Supreme Court held that, because the law criminalizing possession of peyote was neutral and generally applicable, it did not impinge on their fundamental right to free exercise of religion so as to invoke the strict-scrutiny test. *Id*. at 885. The Court held that to make an individual=s obligation to obey the law contingent upon the law=s coincidence with

_____

[4] Congress enacted the Religious Freedom Restoration Act of 1993 (ARFRA@) in direct response to the Supreme Court=s decision in *Smith*. *See* 42 U.S.C. ' 2000bb, *et seq*.; *City of Boerne v. Flores*, 521 U.S. 507, 512 (1997). The Court reinstated a district court decision that found Congress exceeded its constitutional authority by enacting RFRA. *Flores*, 521 U.S. at 535-36.

**6**

religious beliefs except where the State=s interest is compelling would permit the individual to become a law unto himself, contradict constitutional tradition and common sense, and invite anarchy, given the diversity of religious beliefs in this country. *Id.* at 888-90.

The Supreme Court=s refusal to apply the strict-scrutiny test to a neutral and generally applicable law that incidentally criminalizes a religious ritual argues persuasively that we should not apply strict scrutiny to a neutral and generally applicable requirement that a license applicant inform the licensing board of his social-security number. There is no indication from the text of the statute or the record of this case that the requirement is intended, overtly or covertly, to burden religious practice or belief. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534-36 (1993). We therefore apply the rational-basis test to the requirement=s asserted burden on Mauldin=s religious beliefs.

The same logic applies to Mauldin=s assertions of his rights to not speak and to privacy; he asserts these rights as they relate to his right to worship free of governmental restraint or compulsion. Mauldin is not being singled out for this requirement because of his religious beliefs. Nor is he required to pledge or proclaim support for the requirement or the government. *Compare Wooley v. Maynard*, 430 U.S. 705, 717 n.15 (1977) (dicta that having AIn God We Trust@ on currency does not compel speech because it is not associated with individual and not publicly displayed), *with Wooley*, 430 U.S. at 717 (New Hampshire cannot compel citizens to display on their cars license plates with ALive Free or Die@) *and West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (Jehovah=s Witnesses cannot be compelled in school to recite Pledge of Allegiance against their beliefs because Athe compulsory flag salute and pledge requires affirmation of a belief and an attitude of mind@). Indeed, it is not clear that supplying a social-security number on an application is considered speech under the Constitution. *See United States v.*

**7**

*Sindel*, 53 F.3d 874, 878 (8th Cir. 1995) (AThe IRS summons requires Sindel only to provide the government with information which his clients have given him voluntarily, not to disseminate publicly a message with which he disagrees. Therefore, the First Amendment protection against compelled speech does not prevent enforcement of the summons.@). Mauldin, like every other license applicant in Texas, is required for a limited purpose to divulge to a state agency a number that was assigned to him by the federal government.

**Applying the rational-basis test**

Under the rational-basis test, similarly situated individuals must be treated equally under the statutory classification unless there is a rational basis for not doing so. *Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex. 1985). We must uphold the law Aif there is any reasonably conceivable state of facts that could provide a rational basis for the classification.@ *Federal Communications Comm=n v. Beach Communications, Inc.*, 508 U.S. 307, 313-14 (1992). A legislative classification must be sustained unless it is arbitrary and bears no rational relationship to a legitimate governmental interest; there may be more than one permissible resolution of a legislative challenge. *See Jefferson v. Hackney*, 406 U.S. 535, 546-47 (1972). The Supreme Court summarized the burdens on the parties, writing that a state

> has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature=s generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are

8

practical ones and may justify, if they do not require, rough accommodationsCillogical, it may be, and unscientific.

*Heller v. Doe*, 509 U.S. 312, 320-21 (1993) (quotations and citations omitted).

State law requires the Board to request, and applicants for licenses to supply, their social-security numbers A[t]o assist in the administration of laws relating to child support enforcement . . . .@ Tex. Fam. Code Ann. ' 231.302(c)(1). The statute expressly does not prohibit agencies from obtaining the social-security numbers under other statutes, but states that Aa social-security number provided under this section is confidential and may be disclosed only for the purposes of responding to a request for information from an agency operating under the provisions of Part A or D of Title IV of the federal Social Security Act.@ *Id*. ' 231.302(e).

Mauldin argues that requiring plumber=s license applicants to provide social-security numbers is not rationally related to the State=s interest in having qualified plumbers or enforcing child-support obligations. He questions the need for social-security numbers when the Board has other identifying information such as name, address, and driver=s license numbers. He argues that administrative expediency is not a sufficient basis to justify infringing on his rights. *See Frontiero*, 411 U.S. at 688-90. He also challenges the effectiveness of the license-suspension scheme, noting that only 3300 licenses of any kind have been suspended since 1996 and that only two plumbers= licenses out of 18,791 were suspended in 1999. He contends that casting the net over all state licensees to catch a few delinquent child-support obligors is unreasonable. *See Whitworth*, 699 S.W.2d at 197 (statute barring passengers from suing closely related drivers for car-wreck injuries unfairly assumed that all closely related people collude in fraudulent claims); *Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 172 (Tex. 1981)

9

(rule requiring all transfer students to sit out year of interscholastic competition unfairly assumed that all transfer students were recruited). He proposes that only child-support obligors be required to disclose their social-security numbers and their licenses.

The requirement that applicants for licenses provide their social-security numbers does not impose disparate treatment on similarly situated persons. All applicants for licenses must provide their social-security numbers along with other identifying information such as their names and addresses. The statute treats similarly situated persons (license applicants) identically (they must provide the information). This is unlike the invalidated Wyoming statute that treated similarly situated persons (licensed drivers who possess alcohol illegally) differently (drivers under age nineteen lost their licenses; drivers aged nineteen and over suffered no license repercussions) based on a characteristic not relevant to the licensing criteria or the problem to be corrected. *Johnson v. State Hearing Exam=r=s Office*, 838 P.2d 158, 173-74 (Wyo. 1992). The statute requires agencies to treat people differently only if they are in different situations; the social-security numbers of persons who are subject to child-support enforcement actions are released to a requesting agency, while other licensees= numbers are confidential. Tex. Fam. Code Ann. ' 231.302(e).

We conclude that this information-gathering statute is rationally related to the goal of enforcing child-support obligations. Congress and the legislature have determined that the threat of license denial or revocation could be useful in prodding recalcitrant child-support obligors to pay.[5] They have determined that collecting the social-security numbers of license applicants will assist in enforcing that

---

[5] The rationality of the relationship between license suspensions to child-support obligation enforcement is not squarely presented here. Mauldin does not request relief from the revocation provision in his petition below. He is not threatened with revocation or nonrenewal as a delinquent child-support obligor, and asserts strenuously that he never will be.

penalty more quickly and accurately. The social-security number is unique to the individual, unlike names or addresses. The cases Mauldin cites to argue that mere administrative convenience is not sufficient to justify abridgement of a constitutional right are based on heightened levels of scrutiny imposed on direct, specific deprivations of fundamental rights[6]Cconditions we have determined are not present here. Mauldin complains that the Board has not shown empirically how much collecting the numbers helps enforcement, but the Board is not required to do so. *See Heller*, 509 U.S. at 320-21.

Although the Board=s requirement that Mauldin provide his social-security number does not relate to his qualifications to be a plumber, it is not an irrational requirement. Qualification standards for licensing must rationally relate to the applicant=s ability to perform the tasks for which the license is sought. *See Schware*, 77 S.W.2d at 756 (history of arrests and Communist Party membership did not necessarily show unfitness to practice law). The requirement that Mauldin supply the information, however, is an objective, ministerial requirement rather than a subjective, discretionary judgment on his fitness as a plumber. *Cf. Sindel*, 53 F.3d at 878 (attorney compelled to Aspeak@ when compelled to complete tax form). At most, a Board decision not to license him for failure to supply the information is a judgment that, without the social-security number, Mauldin=s application is incomplete as it would be had he omitted his name, address, or other information.

---

[6] *See*, *e.g.*, *Frontiero v. Richardson*, 411 U.S. 677, 690-91 (1973) (invalidating regulation of military benefits that granted benefits to all military wives, but required nonmilitary husbands to prove that they provided less than half of family income; fact that not requiring nonmilitary wives to prove dependence saved time not sufficient reason to discriminate based on gender).

The Board=s argument that it must collect this information from all applicants because they are all potential delinquent child-support obligorsCregardless of age, reproductive ability, reproductive intentions, and personal integrityClends some support to Mauldin=s argument that the requirement is overinclusive.[7] However, unlike the statute and rule invalidated in *Whitworth* and *Sullivan*, this statute survives the challenge because it does not punish all applicants. *See Whitworth*, 699 S.W.2d at 197 (barring suits between relatives); *Sullivan*, 616 S.W.2d at 172 (banning transfer students from participating in varsity interscholastic contests for one year). Although the State irrebuttably presumes all applicants to be potential delinquent child-support obligors, it does not take the next step and presume them to be delinquent and punish them by denying them a license.[8] The legislature limited the use of the social-security numbers collected to the purpose for which they were collected; the numbers are otherwise confidential.[9] *See* Tex. Fam. Code Ann. ' 231.302(e).

---

[7] It also invites some chilling extensions of that argument, such as justifying mandatory provision of DNA samples by all citizens because all are potential criminals. Such extensions are not before us.

[8] To the extent that Mauldin considers the mere provision of his social-security number a punishment, that is not the intention of the statute. It is an incidental, but permissible, effect of a generally applicable statute, as discussed above.

[9] Mauldin notes that the Board initially used the social-security numbers on licenses and registration forms; those uses were not authorized by the challenged statute and apparently stopped after complaints



were made.

That Mauldin has proposed an alternative system does not render the Board=s system unconstitutional. Mauldin proposes that, instead of collecting the social-security numbers of all license-holders, the State could less intrusively achieve its objective of enforcing child-support obligations by collecting social-security numbers and licenses of persons entering the domestic relations systemC*i.e.*, persons divorcing or determined to be parents of children needing financial support. The Board questions the effectiveness of the proposed system, noting that many delinquent obligors never enter the domestic relations system. But the merits of Mauldin=s proposal are not relevant because the mere existence of alternative, even superior, solutions does not render the system under review irrational or unconstitutional. *See Smith*, 494 U.S. at 890 (some states= permission of sacramental use of peyote does not mean Constitution requires such accommodation).

## CONCLUSION

Having concluded that the Board=s requirement does not violate the equal-protection clause of the Texas Constitution, we affirm the district court=s judgment.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: December 31, 2002

Publish