ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

January 3, 2005

The Honorable Susan Combs
Commissioner
Texas Department of Agriculture
Post Office Box 12847
Austin, Texas 78711

Opinion No. GA-0289

Re:  Whether an applicant for a commercial
pesticide applicator license is required to furnish
a social security number for purposes of child
support enforcement   (RQ-0247-GA)

Dear Commissioner Combs:

You pose numerous questions that relate to section 231.302(c)(1) of the Texas Family Code (hereinafter "section 231.302(c)(1)").  Your initial question is whether a commercial pesticide applicator license is an occupational license for which submission of a social security number (or suitable affidavit) is required under state and federal laws for purposes of child support enforcement.[1] In the event the answer to the initial question is in the affirmative, and in the event an applicant for such a license claims to have no social security number, you pose several follow-up questions. *See* Request Letter, *supra* note 1, at 1-2.

## I.    Background

The Texas Department of Agriculture (the "Department") is the state agency responsible for regulating pesticides and herbicides, TEX. AGRIC. CODE ANN. §§ 11.001, 76.003 (Vernon 2004), and licensing use of the same. *Id.* §§ 76.071, .102, .105. By way of background, you advise us that an individual has applied to the Department for the renewal of a commercial pesticide applicator license. Request Letter, *supra* note 1, at 6  (Exhibit B). You inform us that the applicant, because of the applicant's religious beliefs, has not provided a social security number as required in the license renewal application; nor has the individual executed an unqualified affidavit supplied by the Department as an alternative to the requirement of providing a social security number attesting to the fact that the person does not have a social security number. *Id.*

Section 231.302(c)(1), which imposes the requirement that a social security number be provided with a commercial pesticide applicator license, was enacted to comply with the child support enforcement provisions of the federal Social Security Act (42 U.S.C. §§ 601-617, 651-669).

---

[1]Letter from Martin A. Hubert, Deputy Commissioner, Texas Department of Agriculture, to Honorable Greg Abbott, Texas Attorney General (July 8, 2004) (on file with Opinion Committee, *also available at* http://www.oag .state.tx.us) [hereinafter Request Letter].

*See* TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). Section 666 of title 42, United States Code, requires that states have in place laws requiring certain procedures, including "[p]rocedures requiring the social security number of . . . any applicant for a professional license, driver's license, occupational license, recreational license, or marriage license be recorded on the application." 42 U.S.C. § 666(a)(13) (2000). Pursuant to that federal statute, the Texas Family Code requires that "each licensing authority shall request and each applicant for a license shall provide the applicant's social security number."[2] TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). The Department may request a social security number in its application form. *See* TEX. AGRIC. CODE ANN. § 76.108(b) (Vernon 2004) ("A person shall apply for an original or renewal commercial applicator license on forms prescribed by the [Department]."). Both the federal and state provisions have as their stated purpose to enhance the effectiveness of child support collection efforts.[3] The state's Title IV-D Agency, which is the Office of the Attorney General,[4] may use the social security number to enforce child support orders under section 231.302(f). TEX. FAM. CODE ANN. § 231.302(f) (Vernon 2002).

## II.    Commercial Pesticide Applicator License as Occupational License

Your initial question is whether a "commercial pesticide applicator license [is] an occupational license" as contemplated by federal law, 42 U.S.C. § 666(a)(13), and state law, Texas Family Code, section 231.302(c)(1). Request Letter, *supra* note 1, at 1.

Section 231.302(c)(1) is not limited to occupational licenses, but instead applies to all licenses issued by state licensing authorities. *See* TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). It is the federal statute that specifically enumerates occupational licenses. *See* 42 U.S.C. § 666(a)(13) (2000). Because neither the federal Social Security Act nor any other federal statute define the term "occupational license " we must look for the plain meaning of the term. *See Smith*

---

[2]As the agency that issues commercial pesticide applicator licenses, the Department is a licensing authority within the auspices of section 231.302(c)(1) of the Family Code. Section 232.001 defines licensing authority as a "department, commission, board, office, or other agency of the state or a political subdivision of the state that issues a license." TEX. FAM. CODE ANN. § 232.001(2) (Vernon 2002).

[3]In 1975, Congress created Child Support Enforcement ("CSE") programs to help needy families by improving child support collection. *See generally Mich. Dep't of State v. United States*, 166 F. Supp. 2d 1228 (W.D. Mich. 2001). Congress sought to obtain the assistance of the states by paying them for participating in CSE programs. *Id.* at 1231. The Federal Parent Locator Service ("FPLS"), used to track absent parents, was an important tool in interstate child support. *Id.* at 1232. Initially, the FPLS contained only an individual's address and place of employment. *Id.* In 1984, Congress added the requirement of the inclusion of the individual's social security number. *Id.* The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA") changed the CSE programs and required states to collect social security numbers from applicants for different types of commercial and professional licenses and provided the ability to suspend all types of licenses of individuals owing past child support. *Id.* Combining new databases created by PRWORA, the social security numbers from license applications and the expanded FPLS, Congress intended to create a rapid response and automated mechanism by which to locate and withhold wages legally obligated for child support payments. *Id.* The key to the effort was the social security numbers. *Id.*

[4]"The office of the Attorney General is designated by Texas law as the state's Title IV-D Agency to perform the functions and provide the services required by the Social Security Act, title IV, part D; 42 United States Code §§ 651, *et seq.*" 1 TEX. ADMIN. CODE § 55.1 (2004).

*v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). "'Occupation' as commonly understood signified the business or activity in which a person engaged in order to secure a living or to obtain wealth." *Gennaro v. United States*, 369 F.2d 106, 108 (8th Cir. 1966). "Occupational license" is defined in a similar manner by Texas statutes. The Texas Government Code defines "occupational license" as a "license, certificate, registration, permit, or other form of authorization, including a renewal of the authorization, that . . . a person must obtain to practice or engage in a particular business, occupation, or profession."[5] TEX. GOV'T CODE ANN. § 2054.251 (Vernon Supp. 2004-05) (chapter 2054 relating to Information Resources). The Texas Occupations Code defines the term as a "license, certificate, registration, permit, or other form of authorization required by law or rule that must be obtained by an individual to engage in a particular business or occupation." TEX. OCC. CODE ANN. § 58.001(7) (Vernon 2004) (chapter 58 contained in title 2, "General Provisions Relating to Licensing"). *See also* TEX. HUM. RES. CODE ANN. § 91.051(10) (Vernon 2001) (defining term as "license, permit, or other written authorization required by a governmental unit as a condition for engaging in an occupation") (chapter 91 contained in title 5, "Services for the Blind and Visually Handicapped"). All three definitions offered by Texas statutes comport with a plain-language understanding of an "occupational license." The definition in the Texas Government Code appears to encompass all aspects of the other definitions, therefore we will utilize it to examine whether a commercial pesticide applicator license is an occupational license.

"A person who operates a business or is an employee of a business that applies state-limited-use or restricted-use pesticides or regulated herbicides to the land of another person for hire or compensation . . . shall apply to the [Department] for a commercial applicator license issued for the license use categories and subcategories in which the pesticide application is to be made." TEX. AGRIC. CODE ANN. § 76.108(a) (Vernon 2004). The commercial application of a pesticide is a business activity for which a license is required. *Id.* § 76.105. Thus, we conclude that a license procured to engage in the business or occupation of pesticide application is an occupational license within the scope of 42 U.S.C. § 666(a)(13). We now address your remaining questions.

---

[5]This definition is consistent with definitions for "occupational license" contained in other states' statutes. *See* GA. CODE ANN. § 34-15-1(7) (2004) ("any license, permit, or other written authority required by any governmental unit to be obtained in order to engage in an occupation"); MICH. COMP. LAWS ANN. § 552.602(q) (West Supp. 2004-05) ("a certificate, registration, or license issued by a state department, bureau, or agency that has regulatory authority over an individual that allows an individual to legally engage in a regulated occupation or that allows the individual to use a specific title in the practice of an occupation, profession, or vocation"); MISS. CODE ANN. § 37-33-13(h) (2003) ("any license, permit or other written authority required by any governmental unit to be obtained in order to engage in an occupation"); MONT. CODE ANN. § 53-7-101(4) (2003) ("a license, permit, or other written authority required by any governmental unit to engage in an occupation"); N.C. GEN. STAT. § 150B-2(4a) (2004) ("any certificate, permit, or other evidence, by whatever named called, of a right or privilege to engage in a profession, occupation, or field of endeavor that is issued by an occupational licensing agency").

## III.   Constitutionality of Social Security Number Requirement

Because religious principles[6] compel the applicant's refusal to provide a social security number,[7] we must first examine the constitutionality of 42 U.S.C. § 666 and section 231.302(c)(1), Family Code, under the Free Exercise Clause of the First Amendment to the United States Constitution.[8]

### A.   Free Exercise Clause

The Free Exercise Clause, made applicable to the states through operation of the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. As its principal guarantee, the Free Exercise Clause guarantees individuals the "right to believe and profess whatever religious doctrine" they desire, and prohibits "'governmental regulation of religious beliefs.'" *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990) (quoting *Sherbert v. Verner*, 374 U.S. 398, 402 (1963)). However, free exercise jurisprudence has long recognized the distinction between the absolute freedom of individual belief and the non-absolute freedom of individual conduct. *Id.* at 877-79 (holding that Free Exercise Clause did not prohibit application of Oregon drug laws to ceremonial ingestion of peyote); *see also United States v. Lee*, 455 U.S. 252, 261 (1982) ("every person cannot be shielded from all the burdens incident to exercising every aspect of the right to practice religious beliefs"). "[T]he Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can extract from the government," *Bowen v. Roy*, 476 U.S. 693, 700 (1986) (quoting *Sherbert*, 374 U.S. at 412), and "cannot be understood to require the government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Bowen*, 476 U.S. at 699. Accordingly, the guarantee of free exercise "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Smith*, 494 U.S. at 879 (quoting *Lee*, 455 U.S. at 263 n.3).

---

[6]You inform us that the applicant's religious beliefs prompt his refusal to provide a social security number. *See* Request Letter, *supra* note 1, at 6. In the materials you submit for our review, the applicant claims his "sincerely held Christian" beliefs preclude use of a social security number. *Id.* (Exhibit B). *See, e.g., Mauldin v. Tex. State Bd. of Plumbing Exam'rs*, 94 S.W.3d 867, 870 (Tex. App.–Austin 2002, no pet.) (explaining scriptural basis for objections to use of social security number).

[7]The applicant's own affidavit attests to the fact that applicant "does not have a *valid* social security number." Request Letter, *supra* note 1, at 6 (Exhibit B) (emphasis added). Nowhere in the information provided us does the applicant unequivocally state that applicant does not have a social security number.

[8]Article I, section 6 of the Texas Constitution provides that "No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship." TEX. CONST. art. I, § 6. Relatively few judicial opinions have examined the parameters of the free exercise aspect of the Texas Constitution. In *Tilton v. Marshall*, the Texas Supreme Court "assume[d] without deciding that the state and federal free exercise guarantees are coextensive." *Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex. 1996). In this opinion, we assume that the Texas Constitution's protection of the free exercise of religion is coextensive with the protections afforded by the United States Constitution.

## B.      Standard of Review

The right to work in a particular profession is not a fundamental right that requires review under a strict scrutiny standard.[9] *See Mauldin v. Tex. State Bd. of Plumbing Exam'rs*, 94 S.W.3d 867, 872 (Tex. App.–Austin 2002, no pet). Instead, it is a protected right subject to rational regulation. *See id.* (citing *State v. Project Principle, Inc.*, 724 S.W.2d 387, 391 (Tex.1981); *Schware v. Bd. of Bar Exam'rs of N.M.*, 353 U.S. 232, 239 (1957)). Although the "right to worship without governmental restriction or compulsion is fundamental, the Supreme Court has refused to strictly scrutinize laws that are generally applicable and neutral toward religion yet have an incidental effect on certain religious practices." *Mauldin*, 94 S.W.3d at 872 (citing *Smith*, 494 U.S. at 878-79). "Absent proof of an intent to discriminate against particular religious beliefs or against religion in general, the Government meets its burden when it demonstrates that a challenged requirement for governmental benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest." *Bowen*, 476 U.S. at 707-08 (plurality opinion[10] holding that statutory requirement that a state agency use a social security number in administering certain programs does not violate the Free Exercise Clause, notwithstanding religious beliefs concerning use of social security numbers); *Smith*, 494 U.S. at 882-90 (adopting test utilized in *Bowen*). Thus, the appropriate standard of review of 42 U.S.C. § 666 and section 231.302(c)(1) is whether the

---

[9]Fundamental rights are those that arise from the express and implied protections of personal liberty recognized in the federal and state constitutions. *See Richards v. League of United Latin Am. Voters* (LULAC), 868 S.W.2d 306, 314 (Tex. 1993). Governmental enactments that impinge upon fundamental rights are reviewed under a strict scrutiny standard of review wherein the enactment must be narrowly tailored to serve a compelling governmental interest. *See Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 666 (1990) ("[S]tatutory classifications impinging upon [a fundamental] right must be narrowly tailored to serve a compelling governmental interest."); *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972) (stating a classification involving a fundamental right must be a compelling state interest).

[10]Because it was set forth in a plurality opinion, the validity of the *Bowen* standard has been the subject of some debate. However, the subsequent *Smith* decision adopted the standard used in *Bowen*. Thus, the "reasonable means of promoting a legitimate public interest" standard is the proper standard by which to measure free exercise claims involving a facially neutral and generally applicable regulation. As one court recently explained,

> In [*Bowen v.*] *Roy*, Chief Justice Burger first articulated a lower standard to be used with neutral, generally applicable laws which incidentally burden religious beliefs. This standard was met when such a law was a "reasonable means of promoting a legitimate public interest." At the time of the decision, five justices expressly rejected this standard. At that same time, the standard that was generally applied to challenges brought under the free exercise clause was that the First Amendment prevented infringements on the exercise of religious beliefs except when justified by some compelling state interest. However, in 1990 the Supreme Court in *Employment Div., Dept. of Human Resources of Oregon v. Smith*, changed the standard to one akin to the one articulated in *Roy*, so that facially neutral laws of general applicability would not be subject [to] this higher level of scrutiny. . . . In 1993, in direct response to the *Smith* decision, the Religious Restoration Act was passed by Congress restoring the compelling interest and least restrictive test to government actions which incidentally burden religious beliefs, but in 1997, in *City of Boerne v. Flores*, the United States Supreme Court struck that law down as unconstitutional, taking us back to the law as expressed in *Smith*.

*Kocher v. Bickley*, 722 A.2d 756, 761 n.13 (Pa. Commw. Ct. 1999) (citations omitted).

requirement that a license applicant provide a social security number is neutral and uniform in application and is a reasonable means of promoting a legitimate public interest.[11]

## C.    Analysis of 42 U.S.C. § 666(a)(13)

42 U.S.C. § 666(a)(13) requires states to have a procedure in place for the acquisition of social security numbers from applicants for certain licenses. *See* 42 U.S.C. § 666(a)(13) (2000). A similar requirement, that applicants for federal benefits provide a social security number, has been determined to be constitutional because the requirement was facially neutral, generally applicable and served a legitimate and important public interest. *Bowen*, 476 U.S. at 708-09. In *Bowen*, the requirement to provide a social security number was facially neutral and served the legitimate and important public interest of preventing fraud in the federal benefit programs. Similarly, the requirement in 42 U.S.C. § 666(a)(13) is facially neutral and generally applicable and serves the legitimate and public interest of nationwide enforcement of child support obligations. *See Yelder v. Hornsby*, 666 F. Supp. 1518, 1519 (M.D. Ala. 1987). Thus, in accordance with *Bowen* and *Smith*, we conclude that the requirement of 42 U.S.C. § 666(a)(13) passes constitutional muster.

## D.    Analysis of Texas Family Code § 231.302(c)(1)

Section 231.302(c)(1) requires the Department (as well as all other Texas agencies offering a license) to request, and applicants to supply, the applicant's social security number for all license applications. The requirement that applicants provide a social security number is facially neutral and applies to any person in Texas who applies for a license from any licensing authority. The statute is obviously not aimed at any particular religious practice and does not attempt to regulate religious behavior. Section 231.302(c)(1) is neutral and uniform in its application.

A Texas court has already determined that section 231.302(c)(1)

> is rationally related to the goal of enforcing child-support obligations. Congress and the legislature have determined that the threat of license denial or revocation could be useful in prodding recalcitrant child-support obligors to pay. They have determined that collecting the social-security numbers of license applicants will assist in enforcing that penalty more quickly and accurately.

---

[11]The Texas Civil Practice and Remedies Code prohibits a governmental agency from substantially burdening a person's free exercise of religion unless the application of the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 110.003(a)-(b) (Vernon Supp. 2004-05). This statute mandates a different, and stricter, standard of review for free exercise claims under Texas law. However, under the federal Supremacy Clause, if a state law conflicts with federal law, the state law is preempted and without effect. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). A state law presents an actual conflict when the state law would obstruct Congress' purposes and objective. *Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001). Here, the comprehensive federal Social Security Act prompted Texas to adopt section 231.302(c)(1). *See* 42 U.S.C. § 666(a)(13) (2000). To the extent that the stricter standard in the Texas Civil Practice and Remedies Code would prohibit a licensing authority in Texas to withhold a license from a license applicant who refused to provide a social security number, it would thwart the purpose and effect of 42 U.S.C. § 666(a)(13), and therefore, must yield to the supremacy of the federal statute.

*Mauldin,* 94 S.W.3d at 874-75 (equal protection challenge to section 231.302 in context of requiring social security numbers for applications for plumbing license). The State of Texas has a legitimate interest in locating absent parents and procuring from them obligated child support payments. Requiring a social security number as a unique identifier from license applicants is a reasonable means of promoting that interest. Accordingly, it is our opinion that section 231.302(c)(1) is constitutional under the reasonable means to promote a legitimate interest standard enumerated in *Smith. See Smith,* 494 U.S. at 882-90. Therefore, the Department may, pursuant to section 231.302(c)(1) of the Family Code, require that a license applicant who has a social security number provide that number with the application regardless of the applicant's religious beliefs.

## IV.     Scope of Section 231.302(c)(1) of the Texas Family Code

Your numerous remaining questions regarding the scope of section 231.302(c)(1) are:

> May the department require an applicant to obtain, not merely provide, a social security number?

> May TDA require or allow an applicant to submit a sworn affidavit stating that the applicant has never been issued a social security number, in lieu of the applicant obtaining and/or providing a social security number?

> May TDA require the applicant to submit information (e.g., birth date) necessary to confirm the applicant's claim that the applicant has never been issued a social security number?

> May TDA require the applicant to provide within said affidavit or separately a release authorizing TDA to query the federal Social Security Administration in order to confirm the applicant's claim that the applicant has never been issued a social security number?

> May TDA require the applicant to submit a sworn affidavit in or on a form prescribed by the department, specifically the form attached as Exhibit A?

> May TDA incorporate into the affidavit that it is submitted "under penalty of perjury?"

> May TDA continue to require an affidavit, from persons claiming to have no social security number, during each subsequent renewal of a person's license to ensure that a social security number has not been issued since the original license was issued?

> May an applicant refuse to provide a social security number, or an affidavit of no social security number in lieu thereof if such an

affidavit is permissible or required, on the basis of religious objections?

Apart from professional, recreational, driver's or marriage licenses, does Section 231.302 apply to all licenses issued by Texas agencies or only to "occupational" licenses?

If Section 231.302 applies only to "occupational" licenses (apart from professional, recreational, driver's or marriage licenses), what constitutes an "occupational" license for purposes of Section 231.302 and should the department seek an opinion from your office for each type of license we issue?

Must the department obtain SSNs from applicants that are artificial persons, that is applicants other than sole proprietorships, such as corporations, partnerships, limited liability companies, and cooperatives?

If the answer to the preceding question is affirmative, from whom must the department obtain SSNs when the applicant is a corporation, partnership, limited liability company, or other artificial person?

Request Letter, *supra* note 1, at 1-2.

There are only two Texas cases that mention section 231.302. *See Mauldin*, 94 S.W.3d 867; *see also Vaughn v. State*, No. 13-99-676-CR, 2002 WL 1380382 (Tex. App.–Corpus Christi June 27, 2002) (not designated for publication). Neither opinion provides much guidance with respect to your remaining questions. Because section 231.302(c)(1) was adopted on the mandate of 42 U.S.C. § 666(a)(13) to "assist in the administration of laws relating to child support enforcement under Parts A and D of Title IV of the federal Social Security Act," TEX. FAM. CODE ANN. 231.302(c) (Vernon 2002), we treat section 231.302(c)(1) and 42 U.S.C. § 666(a)(13) together where appropriate. *See, e.g.*, Tex. Att'y Gen. Op. No. JC-0409 (2001) (construing the Department of Public Safety's authority to require a social security number under section 231.302 of the Family Code in light of 42 U.S.C. § 666).

## A.    Requirement That Applicant Obtain Social Security Number

We believe a prior opinion from this office addresses your question as to whether the Department may require an applicant for a license to obtain a social security number. In Attorney General Opinion JC-0409, this office concluded that an individual applicant for a Texas driver's license is not required to have a social security number as a condition of receiving a driver's license.[12] Tex. Att'y Gen. Op. No. JC-0409 (2001) at 1. As you point out in your letter, JC-0409

---

[12]This office has also previously opined that section 11.15(b), Texas Family Code, requiring a social security number be included in a decree in a suit affecting the parent-child relationship, does not require parties to such a suit to obtain a social security number. Tex. Att'y Gen. Op. No. JM-159 (1984) at 2.

relies, in large part, on Policy Interpretation Question PIQ-99-05, a memorandum of the United States Department of Health and Human Services, Office of Child Support Division, ("HHS")[13] which states that 42 U.S.C. § 666(a)(13) should not be interpreted to mean that a person must obtain a social security number in order to obtain a license. Request Letter, *supra* note 1, at 3. PIQ-99-05 instead suggests that states may require persons who do not have a social security number to submit a "sworn affidavit, under penalty of perjury . . . stating that they do not have a social security number." PIQ-99-05, *supra* note 13. While you question the analytical rigor of PIQ-99-05, Request Letter, *supra*, note 1, at 3-4, we decline to second-guess the interpretation of 42 U.S.C. § 666(a)(13) by the statute's implementing agency. *See* Tex. Att'y Gen. Op. No. JC-0330 (2001) at 2 ("[S]o long as [an agency's] interpretation . . . is a reasonable one that does not do violence to the statutory language, this office will defer to it."); Tex. Att'y Gen. LO-94-041, at 3 n.1 ("This office defers to the [federal agency's] interpretation.").

The intent of 42 U.S.C. § 666(a)(13) is to collect social security numbers to aid in child support enforcement efforts, *see Mich. Dep't of State v. United States*, 166 F. Supp. 2d 1228, 1231-32 (W.D. Mich. 2001), not to add prerequisites to states' licensing requirements. Similarly, it is apparent that, instead of intending to add additional prerequisites to all license applications in the State of Texas, section 231.302(c)(1) is the mechanism employed by Texas to comply with 42 U.S.C. § 666(a)(13). *See* TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002) ("To assist in the administration of laws relating to child support enforcement under Parts A and D of Title IV of the federal Social Security Act[.]"). Attorney General Opinion JC-0409 is consistent with the opinions of attorneys general from other states, who have likewise concluded that a social security number is not required as a condition of receiving licenses. *See* N.D. Op. Att'y Gen. No. F-10 (2002) at 2 (following the suggestion in PIQ-99-05 and opining that a social security number is not a prerequisite for application for marriage license); Ala. Op. Att'y Gen. No. 2002-271 (2002) at 3 ("we continue to interpret [42 U.S.C. § 666(a)(13)(A)] as meaning states are to have in place a process to obtain and record a social security number when one has been assigned by the Social Security Administration and that this provision does not authorize or require social security numbers to be assigned."[14]); Va. Op. Att'y Gen. 124 (1999) at 2 (Virginia statute does not "contemplate that applicants must obtain a [social security] number before applying for a marriage license"). We consequently conclude that because a social security number is not a prerequisite to obtaining a license under 42 U.S.C. § 666(a)(13), it is not a prerequisite to obtaining a license under section 231.302(c)(1) of the Texas Family Code. Accordingly, the Department may not rely on either statute to require an applicant for an occupational license to obtain a social security number.[15]

---

[13]Memorandum from David Gray Ross, Commissioner, Office of Child Support Enforcement, to State IV-D Directors and Regional Program Managers (July 14, 1999), *available at* http://www.acf.hhs.gov/programs/cse/pol/PIQ/piq-9905.htm [hereinafter PIQ-99-05].

[14]Quoting letter from Jo Anne B. Barnhart, Commissioner, Social Security Administration, to Don Siegelman, Governor, State of Alabama (Feb. 4, 2002).

[15]We bring to your attention an observation from a Florida Attorney General opinion that 42 U.S.C. § 666(a)(13) also requires that a social security number be recorded on death certificates. *See* Fla. AG 97-74 (1997). The opinion notes that "there will be instances where people have died who have no social security number, and it would be absurd to read the federal act as preventing a state from issuing a death certificate in those instances." *Id.* at 3. It would be similarly absurd to require the estate of a deceased person who has no social security number to apply for one in order to procure a death certificate. *Id.*

### B.     Sworn Affidavit in Lieu of Social Security Number

You also ask whether the Department may allow or require an applicant to submit a sworn affidavit stating that the applicant has never been issued a social security number. *See* Request Letter, *supra* note 1, at 1. You recite that the Department currently allows an applicant to submit such an affidavit in lieu of providing a social security number. *Id.* at 5. Again, we defer to the interpretation of 42 U.S.C. § 666(a)(13) by the HHS. In PIQ-99-05, HHS expressly suggested such an affidavit for those individuals who have no social security number. *See* PIQ-99-05, *supra* note 13. Moreover, the Texas Department of Agriculture has authority to promulgate forms by which applicants apply for a license. *See* TEX. AGRIC. CODE ANN. § 76.108(b) (Vernon 2004). Accordingly, we conclude that the Department may require, or allow, an affidavit stating that the applicant has no social security number in lieu of the applicant providing a social security number.

### C.     Verification of Claim of No Social Security Number

We address your next two questions together. You inquire whether the Department can require information that would allow the Department to verify the applicant's claim of having no social security number and whether the Department may require a separate affidavit or release authorizing the Department to verify an applicant's claim directly with the Social Security Administration. *See* Request Letter, *supra* note 1, at 1-2.

We assume that the Department would seek to impose one or both of these requirements by rule. Thus, we must examine whether the Department's rulemaking authority would encompass these two requirements.

As an administrative agency, the Department has only those powers expressly conferred on it by statute and those implied powers necessary to accomplish its duties. *Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315 (Tex. 2001). The Department may adopt only rules that are "authorized by and consistent with its statutory authority." *R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992). In deciding whether an agency has exceeded its rulemaking powers, the determinative factor is whether the rule's provisions are "in harmony with the general objectives of the act involved." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995); *see also* Tex. Att'y Gen. Op. No. GA-0212 (2004) at 5.

The Department, working under the supervision of the agriculture commissioner, is "responsible for exercising the powers and performing the duties assigned to the department by this [agriculture] code or *other law*." TEX. AGRIC. CODE ANN. § 11.001 (Vernon 2004) (emphasis added). The Department "may adopt rules as necessary for the administration of its powers and duties under this code." *Id.* § 12.016. Section 231.302(c)(1) of the Family Code is "other law" that imposes a duty on the Department. It imposes a mandatory duty on the Department, as a licensing authority, to "request an applicant's social security number" in connection with license applications. TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). Pursuant to its rulemaking authority in section 12.016 of the Agriculture Code, the Department may adopt rules to carry out this duty, TEX. AGRIC. CODE ANN. § 12.016 (Vernon 2004), so long as the rules are in harmony with the general

objectives of section 231.302(c)(1). *See Meno*, 917 S.W.2d at 750; *see also* Tex. Att'y Gen. Op. No. GA-0212 (2004) at 5.

As we stated earlier, section 231.302(c)(1) was adopted in response to federal legislation (42 U.S.C. § 666) designed to improve child support collection efforts. *See supra*, note 3. The requirement of the social security number is critical to the effort to collect child support obligations across state lines because it is a unique identifier. *Id.* The requirement of 42 U.S.C. § 666(a)(13) and section 231.302(c)(1) that social security numbers be provided in connection with license applications is designed to provide leverage to child support enforcement agencies. *See Mauldin*, 94 S.W.3d at 875. Such agencies (the Office of the Attorney General is the Title IV-D child support enforcement agency in Texas) can use the threat of license suspension to induce child support obligors to fulfill their child support obligations. *Id.*; *see also* TEX. FAM. CODE ANN. § 232.001-.016 (Vernon 2002 & Supp. 2004-05); 42 U.S.C. § 666(a)(3)(C), (16) (2000); *Mich. Dep't of State*, 166 F. Supp. 2d at 1232 (citing Pub. L. No. 104-193, § 369, 110 Stat. 2105, 2251 (1996)). The enforcement agency needs a unique identifier such as a social security number, required by section 231.302(c)(1), to connect child support obligors to license applicants. A rule adopted by the Department seeking to ensure the veracity of an applicant's claim of having no social security number would be in harmony with the purpose of section 231.302(c)(1) and can, we think, be implied from the Department's express statutory responsibility. Accordingly, we conclude that the Department has the authority to require information from a license applicant that would allow the Department to verify a claim that the applicant has no social security number. For the same reason, we also conclude that the Department has authority to require an applicant to execute a release authorizing the Department to verify with the Social Security Administration a claim that the applicant does not have, and has not applied for, a social security number.

### D.      Form of Affidavit/Penalty of Perjury

You next inquire about the Department's authority to require an applicant to submit an affidavit in or on a form prescribed by the Department. An affidavit is a written statement of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and certified to by the officer under his seal of office. *See Perkins v. Crittenden*, 462 S.W.2d 565, 567 (Tex. Crim. App. 1970); TEX. GOV'T CODE ANN. § 312.011(1) (Vernon 1998). The sample affidavit you submitted appears on its face to incorporate statutes cited and legal conclusions reached herein, and to this extent is not inconsistent with the principles stated in this opinion. The specific wording of the affidavit within these legal guidelines is a matter for the Department. *See* TEX. AGRIC. CODE ANN. § 76.108(b) (Vernon 2004).

### E.      License Renewal Application

You also seek our opinion as to whether the Department may continue to require an affidavit from individuals claiming to have no social security number when they submit subsequent license renewal applications. *See* Request Letter, *supra* note 1, at 2. "Our objective when we construe a statute is to determine and give effect to the legislature's intent." *Richardson v. Monts*, 81 S.W.3d 889, 892 (Tex. App.–Austin 2002, pet. denied) (citing *Liberty Mut. Ins. Co. v. Garrison*

*Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998)). "A fundamental rule of statutory construction is [to] . . . first ascertain the legislature's intent in enacting the statute as expressed in its plain language." *Id.* Section 231.302(c)(1) requires that the Department request a license applicant's social security number. TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). The plain language of section 231.302(c)(1) does not differentiate between an application for an initial license and an application for the renewal of a license. Accordingly, we conclude that the Department is required to request a social security number in conjunction with each license application, whether the application is one for an initial license or one for the renewal of a license. Similarly, where an applicant claims to have no social security number, the Department may require the applicant to provide an affidavit attesting to that fact in connection with any license application.

This conclusion comports with the purpose of section 231.302(c)(1), which is to provide accurate identification information to the child support enforcement agency of the state. As circumstances change, a license holder may become a child support obligor after receiving an initial license. Additionally, a person obtaining an initial license based on an affidavit may subsequently be assigned a social security number. A requirement that a social security number, or affidavit in lieu thereof, be required for license renewal applications promotes the purpose of section 231.302(c)(1) by providing current information to the child support enforcement agency.

## F.    Refusal to Provide Social Security Number or Affidavit

You also inquire whether an applicant may refuse to provide a social security number, or an affidavit of no social security number in lieu thereof if such an affidavit is permissible or required, on the basis of religious objections. Provision of a social security number by an applicant in a license application is a prerequisite of section 231.302(c)(1).[16] *See* TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). Recognizing that an individual cannot supply what that person does not have, we have concluded that an affidavit attesting to the fact than an individual does not have a social security number could be submitted in lieu of a social security number. Because we have concluded that 42 U.S.C. § 666(a)(13) and section 231.302(c)(1) are constitutional, we further conclude that a licensing authority may withhold a license from an applicant who has a social security number and refuses to provide it because of religious beliefs, or for the same reason refuses to provide an unqualified affidavit averring that the individual has no social security number. *See* TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002); *see also* Tex. Att'y Gen. LO-96-093 (opining that tax assessor-collector may refuse to issue a certificate of title receipt to an applicant who refuses to disclose his or her social security number).

Although the First Amendment does not preclude the Department from withholding a license due to an applicant's refusal to submit a social security number due to religious beliefs, the federal Privacy Act of 1974 (the "Privacy Act") is relevant to a licensing agency's authority in this regard. Pursuant to section 7(A)(1) of the Privacy Act, it is "unlawful for any federal, state or local government agency to deny to any individual any right, benefit or privilege provided by law because

---

[16]This does not conflict with our conclusion that an individual does not have to obtain a social security number in order to apply for a license. *See supra* p. 9. Where an applicant has a social security number, section 231.302(c)(1) requires the applicant provide it.

of such individual's refusal to disclose his social security account number." Privacy Act of 1974, Pub. L. No. 93-579, § 7(A)(1), 88 Stat. 1896 (1974), reprinted in 5 U.S.C.A. § 552a note (West 1996). However, the prohibition does not apply "with respect to . . . any disclosure which is required by federal statute." *Id.* § 7(A)(2)(A). 42 U.S.C. § 666(a)(13) is a federal statute that clearly falls within the exemption in the Privacy Act. *See In re Rausch*, 197 B.R. 109, 120 (Bankr. D. Nev. 1996) (provision of Bankruptcy Code is federal statute exempted from Privacy Act); *Mullaney v. Woods*, 158 Cal. Rprtr. 902 , 906 (Cal. Ct. App. 1979) (holding federal regulations requiring social security numbers for eligibility for Aid to Families with Dependent Children Act benefits did not violate Privacy Act); *Chambers v. Klein*, 419 F. Supp. 569, 580 (D. N.J. 1976) (Aid to Families with Dependent Children Act regulations issued pursuant to federal statute and thus come within federal statute exception of Privacy Act). Because Texas adopted section 231.302(c)(1) on the mandate of the federal statute, we conclude that, *to a limited extent*, the exemption in the Privacy Act applies in this instance. The limitation stems from the scope of the two statutes. The federal statute, 42 U.S.C. § 666(a)(13), has a narrow scope and requires social security numbers only from applicants for professional, driver's, occupational, recreational, or marriage licenses. 42 U.S.C. § 666(a)(13) (2000). Section 231.302(c)(1) has a broader scope and requires a social security number from all license applicants. TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). Because the federal statute is narrower in scope than section 231.302(c)(1), we must conclude that the "federal statute" exemption in the Privacy Act can include section 231.302(c)(1) only to the extent it is coextensive with 42 U.S.C. § 666(a)(13).

Therefore, where an applicant for a professional, driver's, occupational, or recreational license[17] refuses to provide a social security number, or affidavit in lieu thereof, the respective licensing authority (in this case the Department) may deny a license to that applicant. Because of the Privacy Act, licensing authorities in Texas that issue licenses *other than ones enumerated in 42 U.S.C. § 666(a)(13)* must request a social security number as directed by section 231.302(c)(1), but may not deny a license to an individual who refuses to provide a social security number or affidavit.

## G.      Type of Applications

Regarding the general scope of section 231.302(c)(1), you inquire whether it applies to all licenses (aside from professional, recreational, driver's, or marriage licenses) issued by Texas agencies or only to "occupational" licenses. As we discussed above, section 231.302(c)(1), in contrast to 42 U.S.C. § 666(a)(13), does not enumerate the different types of licenses for which an applicant must provide a social security number. Instead, section 231.302(c)(1) requires "each licensing authority" to request a social security number from "each [license] applicant." TEX. FAM. CODE ANN. § 231.302(c)(1) (Vernon 2002). By its plain language, section 231.302(c)(1) applies to all licensing authorities in Texas irrespective of the type of license issued. *Richardson*, 81 S.W.3d at 892 ("A fundamental rule of statutory construction is that a court should first ascertain the legislature's intent in enacting the statute as expressed in its plain language."). Accordingly, Texas licensing authorities must request social security numbers from all license applicants.

---

[17]We do not include marriage licenses in this list because the right to marry is a fundamental right and garners a heightened level of scrutiny. *Zablocki v. Redhail*, 434 U.S. 374, 383-87 (1978).

We point out here that the difference in scope between 42 U.S.C. § 666(a)(13) and section 231.302(c)(1) does not alter the requirement that a state licensing authority must request, and an applicant provide, a social security number. It only limits a licensing authority's ability, as a result of the Privacy Act, to deny a license application from individuals who refuse to provide a social security number.

## H.    Occupational License

Perhaps in anticipation of our conclusions above regarding the scope of section 231.302(c)(1), you ask "if section 231.302 applies only to 'occupational' licenses . . . , what constitutes an 'occupational' license." Request Letter, *supra* note 1, at 2. We do not conclude that section 231.302(c)(1) applies only to occupational licenses. Instead, we conclude, because of the Privacy Act and the difference in scope between section 231.203(c)(1) and 42 U.S.C. § 666(a)(13), that a licensing authority may only withhold or deny professional, driver's, occupational, or recreational licenses from applicants who refuse to provide a social security number or affidavit. From your question, we assume that the Department is not concerned about the issuance of professional, driver's and recreational licenses, but only about occupational licenses. We think the heart of the Department's question is, of the different types of licenses the Department issues, which constitute occupational licenses that may be denied an applicant when the applicant refuses to provide a social security number or affidavit.

Your initial question inquired about whether a commercial pesticide applicator license was an occupational license. *See supra* pt. II, at 3-4. Because federal statues do not define the term "occupational license," we examined definitions offered by Texas statutes and concluded the Texas Government Code definition provides a plain-language definition of the term. *Id.* We believe that definition answers this more general question about what constitutes an "occupational license." For purposes of 42 U.S.C. § 666(a)(13) and section 231.302(c)(1), an "occupational license" is a license, certificate, registration, permit or other form of written authorization, including a renewal of the authorization, that a person must obtain to practice or engage in a particular business, occupation or profession. We leave it to the Department to determine which of the licenses issued by the Department fall within that definition.

## I.    Applications from Artificial Persons[18]

Finally, you inquire whether the Department must obtain social security numbers from applicants that are artificial persons, other than sole proprietorships, such as partnerships, corporations or other artificial persons. Section 666(a)(13) and section 231.302(c)(1) do not provide the answer to your question. Therefore, in order to answer this inquiry we look to the purpose of 42 U.S.C. § 666(a)(13) and section 231.302(c)(1), both of which aim to improve the collection of child support. Because artificial persons do not have children and are not responsible for their support, there is no reason under these provisions to collect a unique identifier from artificial persons to share with the child support collection agency. We conclude that the Department is not required

---

[18]We construe your question about artificial persons to refer to entities, such as corporations, "created by law and given certain legal rights and duties of a human being." BLACK'S LAW DICTIONARY 1162 (7th ed. 1999).

to obtain social security numbers from such artificial persons. We note that the Social Security Administration does not assign a social security account number to an artificial person. *See* 20 C.F.R. § 422.104(a) (2004) (persons eligible for assignment of social security number). Consequently, we do not address your final question.[19]

---

[19]Your final question is "[i]f the answer to the preceding question is affirmative, from whom must the Department obtain SSNs when the applicant is [an artificial person]." Request Letter, *supra* note 1, at 2. Because we answer the preceding question in the negative, we do not arrive at this question.

# S U M M A R Y

A commercial pesticide applicator license is an occupational license under 42 U.S.C. § 666(a)(13).

The requirement in 42 U.S.C. § 666(a)(13)(A) and section 231.302(c)(1) of the Texas Family Code that a license applicant provide a social security number in conjunction with a license application is neutral and uniform in its application and is a reasonable means of promoting a legitimate public interest. It does not, therefore, violate free exercise of religion guarantees in the United States and Texas Constitutions.

42 U.S.C. § 666(a)(13)(A) and section 231.302(c)(1) do not give the Texas Department of Agriculture (the "Department") authority to require an applicant who does not have a social security number to obtain one before making application for a license.

The Department may require an applicant to provide an unqualified affidavit swearing to the lack of a social security number. An affidavit in lieu of a social security number may also be required in connection with renewal licenses. The Department has authority to promulgate an affidavit that is not inconsistent with the statutes, cites, and legal conclusions reached in this opinion.

The Department has authority to take certain steps, such as requiring additional information from an applicant or requiring an applicant to authorize independent verification with the Social Security Administration, in order to verify the applicant's claim of having no social security number.

An applicant for a professional, driver's, occupational, or recreational license who refuses to provide a social security number or affidavit in lieu of a social security number may be denied the license. For purposes of determining what licenses a licensing authority may deny an applicant, an "occupational license" is a license, certificate, registration, permit or other form of written authorization, including a renewal of the authorization, that a person must obtain to practice or engage in a particular business, occupation or profession.

Section 231.302(c)(1) of the Texas Family Code requires licensing authorities, with respect to all licenses, to request a social security number from applicants.

Social security numbers are not required from license applicants that are artificial persons.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee